**Ex Parte Richard Markeil HENSON.**

No. 06–03–00218–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 19, 2004.

Decided March 17, 2004.

Craig L. Henry, Texarkana, for appellant.

Alwin A. Smith, Assistant District Attorney, Texarkana, for appellee.

## OPINION

BY THE COURT.

A brutal triple homicide, occurring during an apparent after-hours robbery at a Texarkana restaurant, shocked the Texarkana community in early September 2003. A short time later, lifelong Texarkana resident Richard Markeil Henson was arrested and charged with three counts of capital murder for his alleged participation in that crime. After Henson's arrest, his application for writ of habeas corpus requested that bond be set in the amount of $50,000.00. The trial court heard evidence on Henson's application, reviewed relevant caselaw, and ordered bond set at $2,250,000.00 ($750,000.00 on each of the three counts). To this Court, Henson contends the bond setting is oppressively high, in violation of his federal and state constitutional rights. We reduce the bond to $1,500,000.00 ($500,000.00 on each count).

*Standard of Review*

█ "The primary purpose or object of an appearance bond is to secure the presence of a defendant in court for the trial of the offense charged." *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim. App.1980). Bail should not be set so high as to be oppressive, *guaranteeing* the defendant's appearance, but should be high enough to provide *reasonable assurance* the defendant will appear at trial. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex.Crim. App.1980). Bail operates to balance the "presumption of innocence of the accused and the compelling interest of the State that the accused appear to answer the accusation against him." *Balboa v. State*, 612 S.W.2d 553, 557 (Tex.Crim.App.1981). Nevertheless, the burden of proof is on the defendant to show the bail is excessive. *Rodriguez*, 595 S.W.2d at 550.

█ In reviewing bond settings on appeal, we are guided by Article 17.15 of the Texas Code of Criminal Procedure, and we are to reverse a lower court's determination only if we find an abuse of discretion. TEX.CODE CRIM. PROC. ANN. art. 17.15 (Vernon Supp.2004). That is, we will reverse the trial court's decision only if it was made without reference to any guiding principles or was, in other words, arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (op. on reh'g). Even if we would have reached a different result, we should not intervene if the trial court's ruling is within the zone of reasonable disagreement. *Id.* at 391. Under Texas law, the amount of bail required in any case is within the discretion of the court, judge, magistrate, or officer taking the bail, subject to the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15. In addition, the Texas Court of Criminal Appeals has directed courts to consider the accused's work record, family and community ties, length of residency, prior criminal record (if any), and any aggravating circumstances alleged to have been involved in the offense the accused is charged with committing.[1] *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex.Crim. App.1981).

*Evidence at Habeas Corpus Hearing*

At the habeas corpus hearing, the State introduced into evidence Officer Steve Shelley's warrant affidavits which asserted facts on which Shelley based his belief that Henson is guilty in the deaths of Rebecca

---

**1.** Although *Ex parte Rubac* dealt specifically with whether a trial court abused its discretion in refusing to reduce an appeal bond, appellate courts have generally applied these additional considerations in determining whether there was an abuse of discretion in the original setting of an appearance bond. *See Gonzalez v. State*, 996 S.W.2d 350, 352–53 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Ex parte Emery*, 970 S.W.2d 144, 145 (Tex.App.-Waco 1998, no pet.); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex.App.-Fort Worth 1998, no pet.); *Smith v. State*, 829 S.W.2d 885, 887 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd)). We agree these factors are appropriately considered when reviewing either appeal or appearance bonds.

Shifflett, Crystal Willis, and Matthew Hines, occurring while Henson and another were in the course of committing aggravated robbery. According to Shelley's affidavit, Hines' wife contacted police after Hines failed to return home on time and after she had found the restaurant doors locked and Hines' car parked outside. Reportedly, the police entered the restaurant, found all three victims in a back office, determined they had died as the result of gunshot wounds, and recovered six shell casings from the scene.

Shelley's affidavit contains fact allegations—reportedly coming from Henson by way of his brother—consistent with those observed at the restaurant but which could have been known only by someone who had been at the restaurant at the time of, or after, the homicides. Henson's brother reportedly stated to Shelley that (1) Henson admitted to him on the day after the killings he and another man went to the restaurant to rob it, (2) while Henson and the other man were still at the restaurant, the other man entered the back office, shut the door, and apparently fired six shots from a silver handgun in his possession, (3) Henson saw blood on his companion's shoes and shirt when the companion emerged from the office, and (4) while leaving the scene, Henson accepted an envelope containing approximately $400.00 in cash.

Without controverting the warrant affidavits, the defense called Henson's father as its sole witness, presenting evidence of Henson's lifelong Texarkana residence and of his employment in various jobs since attending high school. The evidence also indicated that, although Henson has a brother living overseas and a sister living elsewhere in Texas, the other members of Henson's immediate and extended family live in Texarkana. Henson's father testified that he could arrange to pay only $2,500.00 toward posting Henson's bond, that Henson himself has no assets except a car worth $500.00, and that no other family members are in a position to help post bond. On cross-examination, Henson's father admitted not having spoken with a bondsman about posting bond for Henson.

*Representative Cases*

Contending the bond set in this case is excessive, Henson cites numerous appellate court decisions—none of which are more recent than 1991—in support of his contention that reasonable bail should not exceed $50,000.00. In fact, Henson argues, the Texas Court of Criminal Appeals "has yet to condone a bail amount even approaching seven figures, even in a capital case," citing *Ludwig v. State*, 812 S.W.2d 323, 325 (Tex.Crim.App.1991). The State responds by citing more recent decisions in which courts of appeals have upheld bail amounts set as high as $1,000,000.00 in cases where defendants were charged with having committed the offense of capital murder. *See, e.g., Ex parte Saldana*, No. 13–01–00360–CR, 2002 WL 91331 (Tex.App.-Corpus Christi Jan. 24, 2002, no pet.) (not designated for publication), *overruled in part on other grounds, Ramos v. State*, 89 S.W.3d 122, 126 n. 13 (Tex.App.-Corpus Christi 2002, no pet.); *Ex parte Brown*, No. 05–00–00655–CR, 2000 WL 964673 (Tex.App.-Dallas July 13, 2000, no pet.) (not designated for publication). In still other cases cited by the State, courts of appeals have upheld bail settings ranging from $250,000.00 to $500,000.00. *See, e.g., Ex parte Chachere*, No. 03–01–00404–CR, 2002 WL 99642 (Tex.App.-Austin Jan. 25, 2002, no pet.) (not designated for publication); *Ex parte Richardson*, No. 05–99–01899–CR, 2000 WL 102564 (Tex.App.-Dallas Jan. 31, 2000, pet. ref'd) (not designated for publication).

In *Brown*, the Fifth District Court of Appeals concluded Brown failed to show

the $1,000,000.00 bond set by the lower court was excessive. *Brown*, 2000 WL 964673, at *1–2. The only evidence available to that court, however, was the seriousness of the offense itself, the possible range of punishment, some of the details of aggravating circumstances, and uncontroverted testimony that Brown posed a threat to his estranged wife and to the community in general. *Id.* at *2. We also note Brown wielded a gun and admitted he personally committed the violent crime with which he was charged. *Id.* Unlike Henson, Brown failed to present *any* testimony relating to the factors laid out for consideration in either Article 17.15 or in *Rubac*, as discussed above. Therefore, the record contained no evidence regarding Brown's work record, community ties, length of residency in Texas, or his ability to make bail. *Id.*

Although evidence in these categories was offered for the court's consideration in *Ex parte Saldana*, the Thirteenth District Court of Appeals still held there was no abuse of discretion in setting a $1,000,000.00 bond. *Saldana*, 2002 WL 91331, at *5. Saldana was a lifelong resident of Corpus Christi, who voluntarily surrendered himself on discovering that a warrant was outstanding for his arrest. For these reasons, and because he was regularly employed before his arrest and had family and community ties to the area, he contended it was an abuse of discretion for the court to deny his request for bond reduction. *Id.* at *5. Weighing these factors against the extremely violent nature of the offense, Saldana's family's ability to previously post a $500,000.00 bond, his membership in the violent Raza Unida gang, and other evidence suggesting he was a flight risk and a continuing threat to

the community, the court ultimately determined that the bond set was not excessive. *Id.* at *5.

Unlike the facts presented in *Brown* and *Saldana*, where there was no evidence presented regarding the excessiveness of the bond set or the evidence supporting a reduction was so far outweighed by the violent nature of the crime, the appellant's criminal history, and the ongoing threat to the community, the facts in *Chachere* and *Richardson* supported a reduced bond amount. Noting that a $700,000.00 bond was particularly high, even where the appellant was indicted for solicitation of capital murder, the Third District Court of Appeals reversed a lower court, ordering bond reduced to $250,000.00. *Chachere*, 2002 WL 99642, at *3–4. Evidence in that case showed (1) the relative stability of Chachere's employment, family, and community ties; (2) his compliance with court orders in other matters; and (3) no prior criminal record. *Id.* at *4. In *Richardson*, the Fifth District Court of Appeals upheld a $500,000.00 bond, giving special weight to the nature and circumstances of the offense committed, and stressing the significance of the appellant's confession to having deliberately planned and carried out the murder for which he was charged. *Richardson*, 2000 WL 102564, at *2.

In this case, the trial court cited *Ex parte Chavfull*, 945 S.W.2d 183 (Tex.App.-San Antonio 1997, no pet.), as authority for setting a $750,000.00 bond for each of the three counts of capital murder. We attach significance to the fact that Chavfull not only personally killed during a robbery, but also had a prior conviction, was suspected in other crimes, and was known to have previously associated with dangerous people.[2] *Id.* at 186–87. These key factors

---

**2.** Other cases, such as *Ex parte Simpson*, 77 S.W.3d 894 (Tex.App.-Tyler 2002, no pet.), and *Ex parte Muñoz*, Nos. 05–99–00662–CR & 05–99–00666–CR, 1999 WL 391615 (Tex. App.-Dallas June 16, 1999, no pet.), have upheld bond settings of $600,000.00 and

distinguish *Chavfull* from the allegations against Henson.

In another *Ex parte Brown*, 959 S.W.2d 369 (Tex.App.-Fort Worth 1998, no pet.), we find an appellant more similarly situated to Henson in that this Brown was accused of participating in a robbery in which a victim was killed. Although Brown participated in the robbery, the evidence indicated he stood by as his confederate strangled and stomped the victim to death. *Id.* at 370. There was no evidence Brown had been convicted of a crime or accused of participating in other crimes or of previously fraternizing with dangerous people; nevertheless, considering his relative mobility, the violence of the crime, and the potential threat to the community, the Second District Court of Appeals upheld a $500,000.00 bond. *Id.* at 372–73.

*Analysis*

■ Ultimately, the appropriate amount of bail must be determined on a case-by-case basis. Certain similarities between the case at bar and those already discussed allow for comparison, yet none of the decisions previously cited directly address the appropriate amount of bail under the circumstances before us. We conclude the bond set in this case is not supported by relevant caselaw.

■ Henson presented at least some evidence regarding Article 17.15 and *Rubac* factors. There is no evidence Henson has previously been able to post a significant bond or has ever had occasion to do so. The record contains no evidence Henson has ever been convicted, charged, or linked with criminal activity, was part of a gang, exhibited prior violent behavior, or previously associated with violent people. The evidence also fails to suggest Henson personally wielded the murder weapon; instead, he was reportedly outside the office door when the fatal shots were fired. Testimony at the habeas corpus hearing also indicates that Henson's family and community ties to the area are fairly strong, that he is a lifelong Texarkana resident, and that his family resources are limited. We also see evidence of family stability in Henson's brother coming forward with the report that led the authorities to charge Henson.

On the other hand, we are mindful of the gravity of the crime committed in that, unlike the situations presented in *Chachere* and *Richardson*, where the offenses committed included solicitation of capital murder or capital murder of a single individual, this case alleges the intentional killing of three individuals, apparently for financial gain. While Henson may not have been the shooter, there is no indication that his companion's reportedly having the weapon at the scene was a surprise to him. In fact, the evidence suggests that, after hearing the shots and seeing his companion emerge from the back office with blood on his shirt and shoes, Henson nevertheless left the scene with him and received from him a share of the money taken from the restaurant. Even the evidence touching on factors other courts have used to reduce or support lower bond amounts is somewhat unsatisfactory. The only witness offering such testimony at the habeas corpus hearing was Henson's father, who offered testimony quite similar to parental

$500,000.00, respectively. As with the other previously discussed cases that upheld similar (or higher) bonds, however, the evidence in these two cases demonstrated the appellants'

direct participation in murdering their victims, that they were members of violent gangs, or were deemed flight risks.

testimony previously referred to by the Fourth District Court of Appeals as "inconclusive."[3] *Chavfull,* 945 S.W.2d at 186.

■ In the absence of evidence that Henson personally committed the violence in this case, previously committed or has been previously charged with other crimes, was guilty of prior violent behavior or prior association with violent people, or intended or anticipated the killings in this case, we conclude the setting of a $750,000.00 bond per count is without precedent, and the amount should be reduced. Considering the nature of the offense and the circumstances under which it was committed, however, caselaw clearly supports setting bond at a level sufficiently high to guard the future safety of the community. The uncontroverted warrant affidavits set forth a violent, unprovoked killing of three innocent and unsuspecting individuals during the commission of an aggravated robbery. The evidence of Henson's *Rubac* factors is weak, and Henson faces the possibility, if convicted, of either life in prison or the death penalty. *See Maldonado v. State,* 999 S.W.2d 91, 95 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) ("In considering the nature of the offense, it is proper to consider the possible punishment.") (quoting *Ex parte Charlesworth,* 600 S.W.2d 316, 317 (Tex.Crim.App.1980)).

Under the circumstances, we hold the amount of the bond set by the trial court is unsupported by legal precedent. We order that the bond be reduced to $500,000.00 for each of the three counts of capital murder, for a total bond of $1,500,000.00.

---

**3.** Henson's father testified that Henson's employment history included three jobs in as many years and that he has no assets except for a car, undermining, to some extent, his claim of stability. In addition, although some evidence was offered as to Henson's inability to make bail, there was no indication that anyone had approached a bondsman on Henson's behalf in an attempt to post bond in any amount. *See Ex parte Williams,* 467 S.W.2d 433, 434 (Tex.Crim.App.1971) (holding failure to present evidence of effort to furnish bail insufficient to support complaint of excessive bail).