

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00042-CR

_____

EX PARTE:  DESMOND DEWAYNE JACKSON

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No.  1539-H

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

By his pretrial writ of habeas corpus, Desmond Dewayne Jackson sought to have his $750,000.00 bail[1] reduced in connection with his pending charge of murder during the course of a robbery. After a brief hearing, the trial court denied Jackson's motion without altering its bond requirement. We affirm that denial.

"The primary purpose or object of an appearance bond is to secure the presence of a defendant in court for the trial of the offense charged." *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980). Bail should not be set so high as to be oppressive, guaranteeing the defendant's appearance, but should be high enough to provide reasonable assurance the defendant will appear at trial. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980). Bail operates to balance the "presumption of innocence of the accused and the compelling interest of the State that the accused appear to answer the accusation against him." *Balboa v. State*, 612 S.W.2d 553, 557 (Tex. Crim. App. 1981) (Clinton, J., dissenting in part / concurring in part). Nevertheless, the burden of proof is on the defendant to show that the bail is excessive. *Rodriguez*, 595 S.W.2d at 550.

In reviewing bond settings on appeal, we are guided by Article 17.15 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005). We will reverse

---

[1]Initially, the trial court denied bond. Following a hearing on Jackson's first petition for writ of habeas corpus, the court set his bond at $750,000.00. Jackson then filed this second petition seeking a reduction of that amount.

the trial court's decision only if the court abused its discretion, that is, if the decision was made without reference to any guiding principles or was, in other words, arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Even if we would have reached a different result, we should not intervene if the trial court's ruling is within the zone of reasonable disagreement. *Id*. at 391 (op. on reh'g). Under Texas law, the amount of bail required in any case is within the discretion of the court, judge, magistrate, or officer taking the bail, subject to the following rules:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15. In addition, courts are to consider the accused's work record, family and community ties, length of residency, prior criminal record (if any), and any aggravating circumstances alleged to have been involved in the offense the accused is charged with committing. *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981).

In this case, Jackson argues that the trial court abused its discretion in refusing to lower bail, because the State presented no evidence about the nature and circumstances of the offense that could justify setting such an excessively high level of bail, $750,000.00. Citing this Court to our case of *Ex parte Henson*, 131 S.W.3d 645 (Tex. App.—Texarkana 2004, no pet.), in which we held bail of $750,000.00 for each of three counts of capital murder was excessive, Jackson argues that his bail should be lowered to no more than $100,000.00.[2] The State responds by pointing out that this is a capital murder prosecution, as was *Henson*, and that, in line with that case, the amount required here was not excessive.

At the beginning of the hearing, the court, before hearing any evidence, stated that it was taking judicial notice of the complaint, the arrest warrant, and the attachments. There was little testimony given at the hearing.[3] Jackson testified that he owned nothing, that he had three children, and that his wife was employed, but her expenses exceeded her income. He testified that he could not post bond, either personally or through efforts of family and friends, and that even the requested

---

[2]In *Henson*, we reduced the bail from $750,000.00 per count to $500,000.00 per count, in light of proof of the unprovoked murder of three individuals but under evidence suggesting that Henson was not the shooter and had strong community ties. *See Henson*, 131 S.W.3d 645. Here, Jackson is accused of being the shooter and having already traveled to Georgia, from which state he was returned after his arrest on this charge.

[3]Jackson called to the stand Detective Doug Brinkley of the Longview Police Department, but the trial court did not let him testify, ruling that such testimony was contrary to traditional procedures and would constitute improper pretrial discovery. Presumably, this was influenced by Jackson's expressed desire to test through Brinkley the sufficiency of the evidence of the alleged crime. Jackson mentions this refusal in his statement of facts, but does not make it a point of error or an argument on appeal.

4

$100,000.00 bond would be very difficult to work out even through a bondsman. The State questioned Jackson, eliciting testimony that he had not been employed for several months before his arrest and that his wife was living with friends and relatives because the Jacksons had lost their house. After a flurry of questions by the State, to most of which defense counsel either objected or instructed his client not to answer based on Fifth Amendment grounds,[4] Jackson testified, again, that he owned nothing.

The question before us is whether, based on the information before the trial court, it properly exercised its discretion in setting bail in this case.

The court had before it the complaint and an affidavit prepared by Brinkley, which contained a detailed and lengthy description of the charged crime and of another similar robbery that involved an apparently accidental discharge of a pistol but with no one shot.[5]

The court had information before it setting out the nature of the offense, a murder during a robbery—significantly, with Jackson alleged to be the shooter—and of the circumstances surrounding its commission. It had evidence about Jackson's ability or inability to make a particular level of bail. Significantly, it had evidence that, after the shooting, Jackson had departed Texas and

---

[4]We do not see how Fifth Amendment considerations would apply to questions about whether the house the Jacksons lived in was rented or owned or had been foreclosed on.

[5]In this case, the manager of a Cash America Pawn Shop was attacked outside the business, robbed of approximately $8,000.00 and shot to death. A month later, a Krogers was robbed of approximately $14,000.00 by a similarly armed individual. The affidavit reflects that Jackson was identified as the robber in both instances.

was arrested in Georgia and returned to Texas. Further, the court had information about another armed robbery committed only a week later, allegedly by the same person, with details outlining the State's case against him for both allegations. That addresses the circumstances surrounding the original offense and community safety considerations. The amount set is high, but is within the ranges of bail set by other courts for similar types of crimes. *See id.* at 648–49.

We also note that the possible punishment was suggested as being life imprisonment and that Jackson apparently had not had gainful employment for six months before the crimes. *Cf. Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). We recognize that the inability to make this level of bail is one of a number of factors to be considered, but that factor neither controls the amount of bail set nor automatically renders the amount excessive. *Id.*

We conclude that the court had the discretion to set bail at this level and had adequate information before it to allow it to make a reasoned determination. Under these facts, the trial court did not abuse its discretion by declining to reduce bond as requested.

We affirm the order.


Josh R. Morriss, III
Chief Justice

Date Submitted:     June 4, 2008
Date Decided:       June 27, 2008

Publish