In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00042-CR


______________________________





EX PARTE: DESMOND DEWAYNE JACKSON





 


On Appeal from the 188th Judicial District Court


 Gregg County, Texas


Trial Court No. 1539-H




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 By his pretrial writ of habeas corpus, Desmond Dewayne Jackson sought to have his
$750,000.00 bail (1) reduced in connection with his pending charge of murder during the course of a
robbery. After a brief hearing, the trial court denied Jackson's motion without altering its bond
requirement. We affirm that denial.

 "The primary purpose or object of an appearance bond is to secure the presence of a
defendant in court for the trial of the offense charged." Ex parte Rodriguez, 595 S.W.2d 549, 550
(Tex. Crim. App. [Panel Op.] 1980). Bail should not be set so high as to be oppressive, guaranteeing
the defendant's appearance, but should be high enough to provide reasonable assurance the defendant
will appear at trial. Ex parte Ivey, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980). Bail
operates to balance the "presumption of innocence of the accused and the compelling interest of the
State that the accused appear to answer the accusation against him." Balboa v. State, 612 S.W.2d
553, 557 (Tex. Crim. App. 1981) (Clinton, J., dissenting in part / concurring in part). Nevertheless,
the burden of proof is on the defendant to show that the bail is excessive. Rodriguez, 595 S.W.2d
at 550.

 In reviewing bond settings on appeal, we are guided by Article 17.15 of the Texas Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005). We will reverse
the trial court's decision only if the court abused its discretion, that is, if the decision was made
without reference to any guiding principles or was, in other words, arbitrary or unreasonable. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Even if we would have reached
a different result, we should not intervene if the trial court's ruling is within the zone of reasonable
disagreement. Id. at 391 (op. on reh'g). Under Texas law, the amount of bail required in any case
is within the discretion of the court, judge, magistrate, or officer taking the bail, subject to the
following rules:

 1. The bail shall be sufficiently high to give reasonable assurance that
the undertaking will be complied with.

 

 2. The power to require bail is not to be so used as to make it an
instrument of oppression.

 

 3. The nature of the offense and the circumstances under which it was
committed are to be considered.

 

 4. The ability to make bail is to be regarded, and proof may be taken
upon this point.

 

 5. The future safety of a victim of the alleged offense and the community
shall be considered.


Tex. Code Crim. Proc. Ann. art. 17.15. In addition, courts are to consider the accused's work
record, family and community ties, length of residency, prior criminal record (if any), and any
aggravating circumstances alleged to have been involved in the offense the accused is charged with
committing. Ex parte Rubac, 611 S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981).

 In this case, Jackson argues that the trial court abused its discretion in refusing to lower bail,
because the State presented no evidence about the nature and circumstances of the offense that could
justify setting such an excessively high level of bail, $750,000.00. Citing this Court to our case of
Ex parte Henson, 131 S.W.3d 645 (Tex. App.--Texarkana 2004, no pet.), in which we held bail of
$750,000.00 for each of three counts of capital murder was excessive, Jackson argues that his bail
should be lowered to no more than $100,000.00. (2) The State responds by pointing out that this is a
capital murder prosecution, as was Henson, and that, in line with that case, the amount required here
was not excessive.

 At the beginning of the hearing, the court, before hearing any evidence, stated that it was
taking judicial notice of the complaint, the arrest warrant, and the attachments. There was little
testimony given at the hearing. (3) Jackson testified that he owned nothing, that he had three children,
and that his wife was employed, but her expenses exceeded her income. He testified that he could
not post bond, either personally or through efforts of family and friends, and that even the requested
$100,000.00 bond would be very difficult to work out even through a bondsman. The State
questioned Jackson, eliciting testimony that he had not been employed for several months before his
arrest and that his wife was living with friends and relatives because the Jacksons had lost their
house. After a flurry of questions by the State, to most of which defense counsel either objected or
instructed his client not to answer based on Fifth Amendment grounds, (4) Jackson testified, again, that
he owned nothing. 

 The question before us is whether, based on the information before the trial court, it properly
exercised its discretion in setting bail in this case.

 The court had before it the complaint and an affidavit prepared by Brinkley, which contained
a detailed and lengthy description of the charged crime and of another similar robbery that involved
an apparently accidental discharge of a pistol but with no one shot. (5) 

 The court had information before it setting out the nature of the offense, a murder during a
robbery--significantly, with Jackson alleged to be the shooter--and of the circumstances
surrounding its commission. It had evidence about Jackson's ability or inability to make a particular
level of bail. Significantly, it had evidence that, after the shooting, Jackson had departed Texas and
was arrested in Georgia and returned to Texas. Further, the court had information about another
armed robbery committed only a week later, allegedly by the same person, with details outlining the
State's case against him for both allegations. That addresses the circumstances surrounding the
original offense and community safety considerations. The amount set is high, but is within the
ranges of bail set by other courts for similar types of crimes. See id. at 648-49.

 We also note that the possible punishment was suggested as being life imprisonment and that
Jackson apparently had not had gainful employment for six months before the crimes. Cf. Clemons
v. State, 220 S.W.3d 176, 178 (Tex. App.--Eastland 2007, no pet.). We recognize that the inability
to make this level of bail is one of a number of factors to be considered, but that factor neither
controls the amount of bail set nor automatically renders the amount excessive. Id. 

 We conclude that the court had the discretion to set bail at this level and had adequate
information before it to allow it to make a reasoned determination. Under these facts, the trial court
did not abuse its discretion by declining to reduce bond as requested.

 We affirm the order.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 4, 2008

Date Decided: June 27, 2008


Publish 

1. Initially, the trial court denied bond. Following a hearing on Jackson's first petition for writ
of habeas corpus, the court set his bond at $750,000.00. Jackson then filed this second petition
seeking a reduction of that amount.
2. In Henson, we reduced the bail from $750,000.00 per count to $500,000.00 per count, in
light of proof of the unprovoked murder of three individuals but under evidence suggesting that
Henson was not the shooter and had strong community ties. See Henson, 131 S.W.3d 645. Here,
Jackson is accused of being the shooter and having already traveled to Georgia, from which state he
was returned after his arrest on this charge.
3. Jackson called to the stand Detective Doug Brinkley of the Longview Police Department,
but the trial court did not let him testify, ruling that such testimony was contrary to traditional
procedures and would constitute improper pretrial discovery. Presumably, this was influenced by
Jackson's expressed desire to test through Brinkley the sufficiency of the evidence of the alleged
crime. Jackson mentions this refusal in his statement of facts, but does not make it a point of error
or an argument on appeal.
4. We do not see how Fifth Amendment considerations would apply to questions about
whether the house the Jacksons lived in was rented or owned or had been foreclosed on.
5. In this case, the manager of a Cash America Pawn Shop was attacked outside the business,
robbed of approximately $8,000.00 and shot to death. A month later, a Krogers was robbed of
approximately $14,000.00 by a similarly armed individual. The affidavit reflects that Jackson was
identified as the robber in both instances.


;      Even if the issue had been preserved, the record shows Perry did not file a report from a
medical expert within the required time limit. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d)



(plaintiff has 180 days with possibility of one thirty-day extension to file report from medical expert
for each health care provider defendant). The Legislature, in its efforts to reduce frivolous lawsuits,
has imposed strict requirements for providing expert reports early in the litigation. Am. Transitional
Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001); Gill v. Russo, 39 S.W.3d 717, 719 (Tex.
App.‒Houston [1st Dist.] 2001, pet. denied). If a plaintiff fails to abide by these time limits, then
the trial court shall, on the motion of any affected health care provider, enter an order sanctioning
the plaintiff by dismissing the plaintiff's action against that defendant with prejudice. Tex. Rev. Civ.
Stat. Ann. art 4590i, § 13.01(e).


 At the January 27, 2003, hearing, Perry admitted he had failed
to file an expert report for each defendant within the time frame allowed. Accordingly, the trial court
was required to dismiss Perry's case with prejudice. See, e.g., Gill, 39 S.W.3d at 719 (trial court had
mandatory duty to dismiss inmate's medical malpractice suit when, after 180 days, no expert report
had been filed for each defendant). Once the case was dismissed, Perry's motion for sanctions was
moot.
II. Denial of Access to Courts
            In his second point of error, Perry contends the defendants' alleged failure to disclose relevant
documents during discovery effectively denied him access to the judicial system. Perry's argument
assumes the defendants intentionally withheld information which Perry intended to file as his report
from a medical expert.
            "All courts shall be open, and every person for an injury done him, in his lands, goods, person
or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. "The open courts
provision acts as an additional due process guarantee granted in the Texas Constitution, prohibiting
legislative bodies from arbitrarily withdrawing all legal remedies from anyone having a well-defined,
common-law cause of action." Perry v. Stanley, 83 S.W.3d 819, 825 (Tex. App.‒Texarkana 2002,
no pet.). A litigant who wishes to prosecute an alleged violation of the Texas Constitution's open
courts provision must first show he or she "has a cognizable common law cause of action that is
being restricted." Sax v. Votteler, 648 S.W.2d 661, 666 (Tex. 1983). The litigant then must
demonstrate "the restriction is unreasonable or arbitrary when balanced against the purpose and basis
of the statute." Id.
            As we previously discussed in Perry, Texas appellate courts, including this one, have held
that, because a plaintiff raising a claim of negligent medical care cannot win at trial or at summary
judgment absent competent expert testimony, "the statutory requirement of an expert report is a
reasonable restriction directly related to the statute's purpose of discouraging frivolous lawsuits. 
[citation omitted]. Other courts, including this one, have applied similar reasoning in upholding the
statute in the face of an open courts challenge." Perry, 83 S.W.3d at 825. Perry has failed to satisfy
the second prong of the open courts analysis.
            Today, we reaffirm our previous holding that the statute is not unconstitutional as applied
to Perry. For the reasons stated, we affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 12, 2003
Date Decided:             November 14, 2003