

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-404-CR**


EX PARTE

JEROME OVERSTREET

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  INTRODUCTION

This is an appeal from the denial of habeas corpus relief requesting bail reduction.  In three points, Appellant Jerome Overstreet contends that the trial court erred by denying his application for bail reduction and ordering that bail continue to be set in the amount of $500,000.  We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In November 2007, Overstreet was arrested for and charged with murdering his wife.  The magistrate set bail at $100,000.  In May 2008, a grand jury returned an indictment against Overstreet for capital murder—murder in the course of committing aggravated sexual assault—and the bond was held insufficient.  On August 4, 2008, the trial court held a hearing to set bail.  Overstreet's bail was then set to $500,000.  On September 18, 2008, Overstreet filed an application for writ of habeas corpus, asserting that the bail was excessive and requesting a reduction in the bail amount.  On November 4, 2008, the court denied the requested relief.  This appeal followed.

## III.  EXCESSIVE BAIL

In three points, Overstreet contends that the trial court erred by denying his application for bail reduction because $500,000 is an excessive amount.  He complains that the bail amount violates his rights under the Eighth and Fourteenth Amendments to the United States Constitution; article I, sections 11 and 13 of the Texas Constitution; and articles 1.07, 1.09, and 17.15 of the Texas Code of Criminal Procedure.  The State maintains that the trial court did not abuse its discretion by denying his request because $500,000 is reasonable when applying the factors under section 17.15 of the Texas Code of Criminal

2

Procedure.  Overstreet's brief combines the argument for his three points, and we will likewise combine our analysis.

### A.    Standard of Review

We review the trial court's denial of a bail-reduction request under an abuse of discretion standard.  *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005) (giving trial court discretion to set amount of bail).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  *Id*.

The primary purpose of an appearance bond is to secure the presence of the defendant at trial on the offense charged.  *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).  Accordingly, bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression.  *Id*.  In a habeas proceeding,

3

the burden of proof is on the defendant to show that the bail, as set, is excessive. *Rubac*, 611 S.W.2d at 849.

Article 17.15 of the Texas Code of Criminal Procedure sets forth the following criteria for establishing a defendant's bail amount:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. In addition to these factors, the court should also weigh the following factors in determining the amount of the bail: (1) the accused's work record; (2) the accused's family ties; (3) the accused's length of residency; (4) the accused's prior criminal record, if any; (5) the accused's conformity with the conditions of any previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50; *Brown*, 959 S.W.2d at 372.

4

**B.    The Nature and Circumstances of the Offense**

The nature of the offense and the circumstances surrounding the offense are primary factors in determining what constitutes reasonable bail. Tex. Code Crim. Proc. Ann. art. 17.15(3); *see Ex parte Davila*, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel Op.] 1981). In considering the nature of the offense, it is proper to consider the possible punishment. *Vasquez*, 558 S.W.2d at 479–80. When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable. *In re Hulin*, 31 S.W.3d 754, 760 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Therefore, pretrial bail must be set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy sentence might be to not appear. *Id*. at 761.

Overstreet is charged with capital murder—murder in the course of committing aggravated sexual assault—a capital felony. Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 2005). If convicted, Overstreet faces an automatic life sentence without the possibility of parole. *See id*. § 12.31. Although the circumstances surrounding the offense were not fully developed at the habeas hearing, the indictment charges Overstreet with causing the death of his wife by traumatic asphyxiation. The indictment further indicates that Overstreet committed the murder of his wife while committing, or attempting to commit,

5

the offense of aggravated sexual assault. Given the serious nature of capital murder, aggravated sexual assault, and the potential for the sentence of life without parole, the trial court properly could have concluded that the bail was reasonable. *See Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.) (reasoning that when a defendant is charged with a serious offense that involves a potentially lengthy sentence, the trial court can, within its discretion, set a sufficiently high bail to secure the presence of the accused).

## C.    Ability to Make Bond

The accused's ability to make bond is merely one factor to be considered in determining the appropriate amount of bail. Tex. Code Crim. Proc. Ann. art. 17.15(4); *Brown*, 959 S.W.2d at 372. Simply because a defendant cannot secure bond for the bail set by the trial court does not automatically render the bail excessive. *Id*. If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bail would be completely eliminated, and the accused would be in the unique posture of determining what his bail should be. *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd).

At trial, Overstreet did not testify or otherwise demonstrate his financial capacity or attempts to furnish bond. The only evidence of Overstreet's financial affairs comes from Overstreet's father and Sonya Ross—Overstreet's

6

paramour—who both testified at the habeas hearing. Overstreet's father testified that he was unsure of Overstreet's financial affairs. Specifically, when asked how much Overstreet could raise by selling his assets, Overstreet's father said, "[W]hat would have to be figured out would be what he owes, and right now I don't know all the things that he owes, you know. I would have to figure up everything." When testifying about his own financial affairs, Overstreet's father was equally vague. When asked whether he had "large sums of cash at [his] disposal," Overstreet's father replied, "I have some. I don't know about large." But Overstreet's father never testified concerning his financial resources or his own assets, nor did he explain what efforts, if any, were made to furnish Overstreet's bond. *See Balawajder v. State*, 759 S.W.2d 504, 506 (Tex. App.—Fort Worth 1988, pet. ref'd) (noting that vague references to inability to make bond do not justify a reduction in the amount set); *Miller*, 631 S.W.2d at 827 (recognizing that it is incumbent on the accused to show that he has made an effort to furnish bond in the amount set). Likewise, Ross was equally vague about Overstreet's finances. When asked whether Overstreet owes money on his vehicles, Ross responded, "I am not for sure."

At the hearing, there was testimony that Overstreet owned three vehicles and a home in Wichita, Kansas. But the record is void of anything to suggest

7

that Overstreet has attempted to leverage these assets in an effort to furnish his own bond. *See Miller*, 631 S.W.2d at 827. There was also testimony that Oversteet was currently incarcerated and that he had lost his job when he was arrested. But again, the record is void of any documents pertaining to Overstreet's bank accounts, potential cash reserves, etc. Because Overstreet demonstrated little evidence supporting his claimed inability to make bail and no evidence regarding his efforts to secure bond, the trial court could properly have concluded that the amount of bail was reasonable under the circumstances. *See Scott*, 122 S.W.3d at 870.

**D.    Safety of the Community**

In determining the appropriate amount of bail, the future safety of the community is to also be considered. Tex. Code Crim. Proc. Ann. art. 17.15(5); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd). The evidence presented at the hearing suggests that Overstreet followed his wife to Texas, where she had fled from his repeated physical and verbal abuse. The charged crime is of a violent nature—murder by asphyxiation during an attempted aggravated sexual assault. Furthermore, Overstreet has previously been convicted of drug-related offenses in California and Kansas. *See Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (stating that it is a matter of common sense that those who

8

possess illegal drugs pose a danger to the community in which they live).  With the safety of the community as a backdrop, the trial court properly could have concluded that Overstreet's bail was reasonable considering the allegations of his domestic abuse and his previous criminal history.

### E.    Community Ties

Courts may also consider an accused's work record, family ties, and length of residency to determine what constitutes reasonable bail.  *See Rubac*, 611 S.W.2d at 849.  Overstreet has never resided or worked in Tarrant County.  In fact, Overstreet is a resident of Wichita, Kansas.  The evidence reveals that he traveled to Texas only after learning that his wife had moved to Grapevine.  Based on the evidence regarding Overstreet's lack of ties to the community, the trial court could have concluded that Overstreet's community ties were insufficient to assure his appearance at trial.  *See, e.g., Brown*, 959 S.W.2d at 373 (holding that bail of $500,000 for alleged capital murder was not excessive, when defendant faced life imprisonment or death penalty and did not have any close ties to the community to assure his appearance at trial).

### F.    Other Factors

A court should also weigh the accused's prior criminal record, if any; the accused's conformity with the conditions of any previous bond; the existence of outstanding bonds, if any; and aggravating circumstances alleged to have

9

been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50; *Scott*, 122 S.W.3d at 869. There is no evidence in the record that Overstreet has ever failed to conform with the conditions of a previous bond. But the record does demonstrate that he has multiple previous convictions for drug-related offenses. Furthermore, the trial court would have been well within its discretion to consider the heinous nature of the crime Overstreet has been charged with, to wit: having murdered his wife by asphyxiation during the commission of an aggravated sexual assault. Given these additional factors, the trial court properly could have concluded that the bail should not be reduced.

## IV. CONCLUSION

Affording due deference to the trial court's ruling, we cannot say that the trial court acted arbitrarily or unreasonably by denying a reduction in Overstreet's bail amount. Overstreet has failed to demonstrate that the set bail is excessive. *See Brown*, 959 S.W.2d at 371 (affirming denial of reduction of $500,000 pretrial bail in capital murder case); *see also Ex parte Jackson*, 257 S.W.3d 520, 523 (Tex. App.—Texarkana 2008, no pet.) (declining to reduce $750,000 bail for defendant charged with capital murder); *Ex parte Wilson*, No. 01-00-00140-CR, 2000 WL 964570, at *2 (Tex. App.—Houston [1st Dist.] July 12, 2000, no pet.) (not designated for publication) (holding that bail of

$500,000 in murder case was not excessive even though defendant lacked a criminal record, willingly surrendered to police when being arrested, posed no threat to the community, and was willing to wear a monitoring device). We hold that the trial court did not abuse its discretion by denying Overstreet's request for bail reduction and overrule his three points. We therefore affirm the trial court's order denying habeas corpus relief.

PER CURIAM

PANEL: MEIER, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 23, 2009

11