*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*




# MEMORANDUM OPINION

No. 04-10-00643-CR

## EX PARTE Brandon HARBER

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 12434
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  December 15, 2010

AFFIRMED

Brandon Harber was arrested for committing the criminal offense of murder. Harber's bail was set at $500,000, and he filed an application for writ of habeas corpus seeking a reduction in his bail amount. After a hearing in which Harber requested that the court reduce his bail to $50,000, the trial court reduced Harber's bail to $300,000. Harber appeals, claiming his pretrial bail is excessive. We affirm the trial court's order.

We review a trial court's bail setting for an abuse of discretion. *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981). "To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Ex parte Hunt*, 138

S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd). We will not disturb the trial court's bail determination if it is within the zone of reasonable disagreement. *Ex parte Jackson*, 257 S.W.3d 520, 521 (Tex. App.—Texarkana 2008, no pet.).

In setting a defendant's bail, a trial court is guided by the following rules and principles:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005); *see Cooley v. State*, 232 S.W.3d 228, 233-34 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Courts should also consider the defendant's work record, family and community ties, length of residency, prior criminal record, conformity with previous bond conditions, the existence of outstanding bonds, and any aggravating factors involved in the charged offense when determining the amount of the bond. *Ex parte Rubac*, 611 S.W.2d at 849-50. It is the defendant's burden, however, to establish that the bail set is excessive. *Id.* at 849. With these general principles in mind, we now consider whether the trial court abused its discretion in setting Harber's bail at $300,000.

**1. Sufficient Bail to Reasonably Assure Appearance**

"The primary purpose or object of an appearance bond is to secure the presence of a defendant in court for the trial of the offense charged." *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). There is no dispute that the bail set by the trial court is sufficiently

high to give reasonable assurance that Harber would comply with the undertaking of appearing in court as required in the future. Harber's family and friends testified that they believed Harber would appear and answer the accusations against him if released on bond. The witnesses further indicated that Harber would reside with his eldest sister and her boyfriend in Blanco County, Texas, who would ensure Harber appears for his scheduled court appearances if he is released.

**2. Not So High as to Constitute an Instrument of Oppression**

"Bail set in a particular amount becomes 'oppressive' when it is 'based on the assumption that [the accused cannot] afford bail in that amount and for the express purpose of forcing [the accused] to remain incarcerated during [trial].'" *Richardson v. State*, 181 S.W.3d 756, 759 (Tex. App.—Waco 2005, no pet.) (citation omitted). The record contains nothing to indicate that the trial court rendered its decision on this basis, especially with the trial court having reduced bail from $500,000 to $300,000. Further, a review of recent appellate decisions reveals that courts have upheld bonds of similar amounts where the accused stands charged with committing such a serious offense as murder. *See Ex parte Hearn*, No. 06-10-00149-CR, 2010 WL 4261974, *1-3 (Tex. App.—Texarkana Oct. 28, 2010, no pet. h.) (mem. op., not designated for publication) (concluding $370,000 bail was not excessive for first degree murder charge); *Ex parte Phillips*, No. 05-10-00616-CR, 2010 WL 3548739, *4 (Tex. App.—Dallas Sept. 14, 2010, no pet. h.) (not designated for publication) (determining $500,000 bail was not excessive for first degree murder charge); *Haynes v. State*, No. 11-09-00135-CR, 2009 WL 2403569, *1-3 (Tex. App.—Eastland Aug. 6, 2009, no pet.) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion when it denied appellant's request to reduce bail from $500,000 to $50,000 for a murder charge); *Ex parte McBride*, No. 12-07-00241-CR, 2007 WL 4216370, *2-3 (Tex. App.—Tyler Nov. 30, 2007, no pet.) (mem. op., not designated for publication) (analyzing

various appellate court decisions and concluding bail of $250,000 for first degree murder charge was not excessive); *Milner v. State*, 263 S.W.3d 146, 149-51 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (upholding $500,000 bond where appellant was accused of committing the crimes of murder and attempted murder).

**3. Nature of the Offense and Circumstances of its Commission**

Murder is unquestionably a serious offense. It is a first degree felony offense punishable by a term of imprisonment from 5 to 99 years or life in prison and a fine not to exceed $10,000. TEX. PEN. CODE ANN. §§ 12.32, 19.02(c) (West Supp. 2010). "Where the nature of the offense is serious and involves aggravating factors, the likelihood of a lengthy prison sentence following trial is great." *In re Hulin*, 31 S.W.3d 754, 760 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Bond in such cases should be set sufficiently high to secure the defendant's presence at trial because his "reaction to the prospect of a lengthy prison sentence might be not to appear." *Id*. at 761; *see Ex parte Scott*, 122 S.W.3d 866, 869 (Tex. App.—Fort Worth 2003, no pet.).

Harber stands charged with causing the death of Trey Allen Noah by shooting him with a firearm. Although no other details of the crime appear in the record, given the serious nature of the offense of murder, the allegation of the use of a deadly weapon, and the potential for a lengthy sentence, the trial court could have concluded that a high bond amount bond was reasonable in this instance. *See Ex parte Hearn*, 2010 WL 4261974, at *2; *Ex parte Hunt*, 138 S.W.3d at 506.

**4. Ability to Make Bail**

"Although the ability to make bail is a factor to be considered, ability alone, even indigency, does not control the amount of bail." *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). If the ability to make bail in a specified amount controlled, the role of

the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Ex parte Hunt*, 138 S.W.3d at 506.

Harber did not testify at the hearing on his petition for writ of habeas corpus. Instead, Harber's family and friends stated that Harber had limited financial resources and could not afford to post a substantial bond. They stated Brandon is self-employed as a fence builder and owns a skid loader/bobcat in connection with his business, which is encumbered by a $26,000 loan, a truck worth approximately $1,500, a welder of unknown value, and various other tools of unknown value. He owns no real property and has $10.86 in a savings account. There is no evidence of how much money Harber was making prior to his arrest.

Harber's sister testified Harber's family and friends have raised $5,000 for a bond, but "if push comes to shove" they could possibly raise an additional $5,000.[1] Harber's sister, however, acknowledged that Brandon has not tried to negotiate a loan to help pay for his bond. Although Harber's family and friends have made diligent efforts to raise funds for Harber's bond, the trial court could have determined the evidence on this factor does not support a further reduction of bail because it was unreasonable for Harber to conclude that he could not make bond when he made no efforts to obtain a loan to pay for his bond. *See Ex Parte Mazziotta*, No. 05-94-00776-CR, 1994 WL 280253, *2 (Tex. App.—Dallas 1994, no pet.) (per curiam, not designated for publication) ("Without showing the surrender value of his IRA and without showing whether he could obtain a loan, appellant has not demonstrated that the trial court abused its discretion.").

---

[1] A bail bondsman typically charges 10% of the total bail amount and requires "substantial collateral" before agreeing to post the bail. *See Ex parte Sabur-Smith*, 73 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## 5. Future Safety of the Community

There is no issue concerning the future safety of the victim because Noah is deceased. As for Noah's family and the rest of the community, no evidence was developed at the hearing to suggest Harber poses a threat to either the victim's family or the community.

## 6. Other Factors

Harber's family and friends testified Harber has maintained employment for the last three years. Harber began his own business when he was 16 years old and "is one of those guys someone call[s] and . . . he's there." Harber's business operates across county lines, including Blanco, Comal, and Hays Counties. Harber has no prior criminal history, and there is nothing in the record concerning his conformity with previous bond conditions or the existence of other outstanding bonds. Although some of these factors may favor reducing the amount of Harber's bail, the trial court also heard evidence that Harber lacks significant ties to Gillespie County, Texas. The record shows Harber has resided in Blanco County, Texas for the past eleven years with his older sister and her boyfriend. In addition, the trial court heard evidence that Harber's mother travels the country as a truck driver and his brother lives in Bastrop County, Texas.[2] Harber's lack of ties to Gillespie County could have reasonably persuaded the trial court to conclude a significant bond was required to assure Harber's appearance in court.

### CONCLUSION

Harber had the burden to show the $300,000 bond is excessive. *See Ex parte Rodriguez*, 595 S.W.2d at 550. After having reviewed the record, we conclude the trial court's ruling about the proper amount of bail is within the zone of reasonable disagreement. We therefore cannot

---

[2] According to Harber's sister, Harber's father is deceased and Harber does not have much of a relationship with their mother. The trial court, however, was free to give this testimony little weight when assessing whether Harber was a flight risk. *See Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.) (stating "[t]he trial court, as the trier of fact, has the job of judging the credibility of the witnesses and the weight to be given their testimony" at a bail reduction hearing).

say the trial court abused its discretion concerning the amount of Harber's bail. *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("It is not our role to simply substitute our judgment for that of the trial court."). Harber's sole issue on appeal is overruled, and we affirm the trial court's order.

Catherine Stone, Chief Justice

DO NOT PUBLISH