**Ex Parte Jamal D. BROWN.**

No. 2–97–472–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 8, 1998.

Paul Nugent, Foreman, Deguerin, Nugent & Gerger, Houston, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Chief of Appellate Section, Tanya S. Dohoney, Alan Levy, and Robert Mayfeild, Assistant Criminal District Attorneys, for appellee.

Before CAYCE, C.J., and DAY and HOLMAN, JJ.

## OPINION

DAY, Justice.

This is an appeal from the denial of habeas corpus relief. A grand jury indicted Appellant Jamal Brown ("Jamal") on one count of capital murder. Bail was set at $500,000. Jamal filed a pretrial application for writ of habeas corpus, asserting that the bail was excessive. Following an evidentiary hearing on August 8, 1997, the trial court denied relief, and this appeal followed.

## SUMMARY OF THE EVIDENCE

The indictment alleges that Jamal killed David Ward, the victim, by strangulation or external compression of Ward's throat, during the course of a robbery. In a written confession introduced at the habeas corpus hearing,. Jamal assets that Aaron Foust is the actual killer. This assertion is corroborated by Foust's written statement.

According to the confessions, Foust and Jamal went to Ward's house one evening. After visiting for a while, Ward said that he was tired and wanted to go to bed. Foust became violent and told Ward to give him some money. Foust tied up Ward and began rifling through his wallet while Jamal carried liquor bottles from the house to Ward's car. Foust found Ward's ATM card and demanded his pin number to get cash. After getting the number, Foust told Jamal to stay at the house with the victim and left to use the ATM card.

When Foust returned, he and Jamal loaded Ward's VCRs and stereo equipment into Ward's car. Jamal heard Ward yelling, "Don't kill me please, don't kill me," and saw Foust choking Ward with his arms. Next, Jamal watched as Foust put a pillow over Ward's face and sat on the pillow. Last, he saw Foust stepping on Ward's neck with his boot, trying to break Ward's neck.

After killing Ward, Foust told Jamal to spray paint graffiti on the walls to make it appear as though gang members had killed the victim. Jamal complied, misspelling some of the words to make the fictitious gang members appear uneducated. Foust and Jamal left in Ward's car, taking the stolen property to Jamal's apartment. When the news stations reported the murder a few days later, Jamal bought gasoline for Foust to burn the victim's car. Jamal was later arrested and charged with capital murder.

On July 23, 1997, Jamal filed an application for writ of habeas corpus, alleging that the $500,00 bond was excessive and amounted to a denial of bond. At the hearing for habeas relief, Yolanda Brown ("Yolanda"), Jamal's

mother, testified that Jamal is twenty-one years old and was a student at the University of Texas in Arlington (UTA) when the alleged offense occurred. While at UTA, Jamal was president of the university NAACP organization and served on the student council. Yolanda testified that Jamal wants to return to classes at UTA and live with his grandmother in Dallas while awaiting trial.

Yolanda also told the trial court that she lives in Louisiana at the Barksdale Air Force Base and works at a casino in Shreveport as a finance supervisor. She testified that her husband (Jamal's father) is a military police officer for the United States Air Force. He is stationed overseas in Turkey and will not return to the United States until July 1998. Because Jamal's father is a senior non-commissioned officer, he is not allowed to live on the military base. Consequently, Jamal's parents must maintain two households.

On cross-examination, Yolanda acknowledged that Jamal has moved several times in recent years. Before college, Jamal lived on the Barksdale Air Force Base with his family. Thereafter he moved to Commerce, Texas, to attend East Texas State University (ETSU) for one year. While at ETSU, Jamal lived for six months in the campus dormitory. After that, he spent six months in an apartment across the street from the university. The following summer, he moved in with his grandmother in Dallas. Last, he moved to Arlington, Texas, where he was living at the time of the alleged offense.

Although Jamal has only been in the area for a short time, several of his relatives reside in Texas. In addition to his grandmother, Jamal's two uncles and aunt live in Dallas. Another of Jamal's uncles lives in Houston and works for NASA. All of these relatives attended Jamal's hearing and are willing to co-sign Jamal's bond and make certain that he abides by any conditions imposed by the trial court.

Yolanda also testified that Jamal owes $1,500 on four credit cards and approximately $6,000 in student loans. He has no bank account, no motor vehicle, and no assets of any other kind from which to post bond. Yolanda testified that several bond companies told her that $500,000 was too high to risk bonding. She said that one bond company would require $75,000 in cash and $200,000 in property to secure a $500,000 bond, while another asked for $125,000 cash and $500,000 in property. Yolanda testified that Jamal and his family could not make the $500,000 bond, but they could raise $5,000 in collateral to put toward bond.

Ronnie Long, a bail bondsman in Tarrant County, testified that he probably would not give a $500,000 bond, but if he did, he would require unencumbered collateral for the full $500,000, plus $100,000 in cash. Long also testified that for $5,000 in collateral, he could give a $50,000 bond.

At the close of evidence, the trial judge stated that although the bail was high, it was appropriate under the circumstances and declined to reduce the amount.

## EXCESSIVE BAIL

 In three points, Jamal asserts that the trial court abused its discretion and erred in refusing to reduce his bond.[1] The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *See Ex parte Rodriguez,* 595 S.W.2d 549, 550 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex.Crim.App.1977). Bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression. *See Ex parte Ivey,* 594 S.W.2d 98, 99 (Tex.Crim.App.1980); *Vasquez,* 558 S.W.2d at 479. The burden is on the person seeking the reduction to demonstrate that the bail set is excessive. *See Ex parte Charlesworth,* 600 S.W.2d 316, 317 (Tex. Crim.App. [Panel Op.] 1980); *Vasquez,* 558

---

1. *Point one asserts that the bail amount is excessive in violation of the Eighth Amendment to the United States Constitution. U.S. CONST. amend VIII. Point two complains of excessive bail under article I, sections 11 and 13 of the Texas Constitution. TEX. CONST. art. I, §§ 11, 13. Point three*

maintains that the bail is excessive under articles 1.07, 1.09, and 17.15 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. arts. 1.07, 1.09 (Vernon 1977), art. 17.15 (Vernon Supp.1998).

S.W.2d at 479. Further, the decision regarding a proper bail amount lies within the sound discretion of the trial court. *See Ex parte Green,* 940 S.W.2d 799, 801 (Tex.App.—El Paso 1997, no pet.); *Smith v. State,* 829 S.W.2d 885, 887 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Ex parte Miller,* 631 S.W.2d 825, 827 (Tex.App.—Fort Worth 1982, pet. ref'd); *see also* TEX.CODE CRIM. PROC. ANN. art. 17.15 (giving the trial court discretion to set the amount of bail).

■ Article 17.15 of the Texas Code of Criminal Procedure sets forth the following criteria for the trial court to consider in setting bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15. The following factors should also be weighed in determining the amount of bond: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record, if any; (5) the accused's conformity with the conditions of any previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Ex parte Rubac,* 611 S.W.2d 848, 849–50 (Tex.Crim.App. [Panel Op.] 1981); *Ex parte Goosby,* 685 S.W.2d 440, 441 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

■ On appeal, Jamal asks this court to reduce his bond to $50,000, alleging that he has no assets and his family's financial resources are limited. However, the ability of an accused to post bond is merely one factor to be considered in determining the appropriate bail. *See Ex parte Vance,* 608 S.W.2d 681, 683 (Tex.Crim.App. [Panel Op.] 1980); *Charlesworth,* 600 S.W.2d at 317; *Miller,* 631 S.W.2d at 827. Simply because a defendant cannot meet the bond set by the trial court does not automatically render the bail excessive. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Miller,* 631 S.W.2d at 827. The amount of bail must also be based on the nature of the offense and the circumstances under which it was committed. *See Ex parte Davila,* 623 S.W.2d 408 (Tex.Crim. App. [Panel Op.] 1981); *Miller,* 631 S.W.2d at 827. Furthermore, in considering the nature of the offense, it is proper to consider the possible punishment. *See Charlesworth,* 600 S.W.2d at 317; *Vasquez,* 558 S.W.2d at 480; *Miller,* 631 S.W.2d at 827.

■ In the instant case, the nature of the offense is a brutal murder in which the victim was allegedly strangled, suffocated, and eventually stomped to death with a boot. The circumstances of the offense as set forth in the indictment and Jamal's confession depict a violent, unprovoked killing and demonstrate an appalling lack of concern for human life.[2] If convicted, Jamal faces life imprisonment or the death penalty. *See* TEX. PENAL CODE ANN. § 12.31(a) (Vernon 1994).

Nevertheless, Jamal argues that his bond should be reduced because he is a college student with no prior criminal record. He contends that his family and community ties

---

**2.** *Compare Ludwig v. State,* 812 S.W.2d 323, 325 (Tex.Crim.App.1991) (bond reduced from $1,000,000 to $50,000 in capital murder case where circumstances of the offenses were not developed at habeas hearing); *Smithwick v. State,* 880 S.W.2d 510, 511 (Tex.App.—San Antonio 1994, no pet.) (bond reduced from $500,000 to $100,000 in case involving murder and injury to a child where facts surrounding the offenses were not developed at habeas hearing); *Ex parte McDonald,* 852 S.W.2d 730, 735–36 (Tex.App.—San Antonio 1993, no pet.) (bond reduced in capital murder case from $1,000,000 to $75,000 where facts surrounding the offense were not developed at habeas hearing).

to the area are sufficient to warrant a bond reduction. Jamal also asserts that the bond is excessive because the evidence at the habeas trial shows that Jamal did not use or exhibit a weapon and that Foust, not Jamal, actually killed the victim.

Keeping in mind that the primary purpose of an appearance bond is to compel the accused's presence at trial, we hold that the trial court did not abuse its discretion in setting bond at $500,000. In the case at hand, if Jamal fails to appear at trial, it is his family's assets and savings that are at risk rather than his own. His father is stationed overseas and Jamal has lived abroad in the past. Jamal was not employed at the time of the offense. Although he has a few relatives in Dallas, none of his immediate family lives in Texas. There was no evidence that he is married or has children in Texas. Jamal owns no property in the state. He is attending UTA as a transfer student and offered no evidence that he is a Texas resident. Further, as established by his mother's testimony, Jamal has moved around all his life and has lived at five different residences in the last two years. As a result, we find that Jamal does not have any close ties to the community that might assure his appearance at trial. Moreover, Jamal gave a written statement implicating himself as a party to capital murder. As noted above, he faces life in prison or the death penalty if convicted. Under the circumstances of this case, Jamal poses a flight risk if bond is reduced.

Although the bail amount is high, Jamal has failed to demonstrate that the bail set is excessive. Jamal's points are overruled and the order denying habeas corpus relief is affirmed.