In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana


______________________________


No. 06-03-00218-CR

______________________________

 
 
EX PARTE:
RICHARD MARKEIL HENSON
 
 

                                              


On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 03MS0044-005


                                                 






OPINION

            A brutal triple homicide, occurring during an apparent after-hours robbery at a Texarkana
restaurant, shocked the Texarkana community in early September 2003. A short time later, lifelong
Texarkana resident Richard Markeil Henson was arrested and charged with three counts of capital
murder for his alleged participation in that crime. After Henson's arrest, his application for writ of
habeas corpus requested that bond be set in the amount of $50,000.00. The trial court heard
evidence on Henson's application, reviewed relevant caselaw, and ordered bond set at $2,250,000.00
($750,000.00 on each of the three counts). To this Court, Henson contends the bond setting is
oppressively high, in violation of his federal and state constitutional rights. We reduce the bond to
$1,500,000.00 ($500,000.00 on each count).
Standard of Review
            "The primary purpose or object of an appearance bond is to secure the presence of a
defendant in court for the trial of the offense charged." Ex parte Rodriguez, 595 S.W.2d 549, 550
(Tex. Crim. App. 1980). Bail should not be set so high as to be oppressive, guaranteeing the
defendant's appearance, but should be high enough to provide reasonable assurance the defendant
will appear at trial. Ex parte Ivey, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). Bail operates to
balance the "presumption of innocence of the accused and the compelling interest of the State that
the accused appear to answer the accusation against him." Balboa v. State, 612 S.W.2d 553, 557
(Tex. Crim. App. 1981). Nevertheless, the burden of proof is on the defendant to show the bail is
excessive. Rodriguez, 595 S.W.2d at 550.
            In reviewing bond settings on appeal, we are guided by Article 17.15 of the Texas Code of
Criminal Procedure, and we are to reverse a lower court's determination only if we find an abuse of
discretion. Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2004). That is, we will reverse
the trial court's decision only if it was made without reference to any guiding principles or was, in
other words, arbitrary or unreasonable. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990) (op. on reh'g). Even if we would have reached a different result, we should not intervene if
the trial court's ruling is within the zone of reasonable disagreement. Id. at 391. Under Texas law,
the amount of bail required in any case is within the discretion of the court, judge, magistrate, or
officer taking the bail, subject to the following rules:
1.         The bail shall be sufficiently high to give reasonable assurance that the
undertaking will be complied with.

2.         The power to require bail is not to be so used as to make it an instrument of
oppression.

3.         The nature of the offense and the circumstances under which it was
committed are to be considered.

4.         The ability to make bail is to be regarded, and proof may be taken upon this
point.

5.         The future safety of a victim of the alleged offense and the community shall
be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. In addition, the Texas Court of Criminal Appeals has
directed courts to consider the accused's work record, family and community ties, length of
residency, prior criminal record (if any), and any aggravating circumstances alleged to have been
involved in the offense the accused is charged with committing.


 Ex parte Rubac, 611 S.W.2d 848,
849–50 (Tex. Crim. App. 1981).
Evidence at Habeas Corpus Hearing
            At the habeas corpus hearing, the State introduced into evidence Officer Steve Shelley's
warrant affidavits which asserted facts on which Shelley based his belief that Henson is guilty in the
deaths of Rebecca Shifflett, Crystal Willis, and Matthew Hines, occurring while Henson and another
were in the course of committing aggravated robbery. According to Shelley's affidavit, Hines' wife
contacted police after Hines failed to return home on time and after she had found the restaurant
doors locked and Hines' car parked outside. Reportedly, the police entered the restaurant, found all
three victims in a back office, determined they had died as the result of gunshot wounds, and
recovered six shell casings from the scene.
            Shelley's affidavit contains fact allegations—reportedly coming from Henson by way of his
brother—consistent with those observed at the restaurant but which could have been known only by
someone who had been at the restaurant at the time of, or after, the homicides. Henson's brother
reportedly stated to Shelley that (1) Henson admitted to him on the day after the killings he and
another man went to the restaurant to rob it, (2) while Henson and the other man were still at the
restaurant, the other man entered the back office, shut the door, and apparently fired six shots from
a silver handgun in his possession, (3) Henson saw blood on his companion's shoes and shirt when
the companion emerged from the office, and (4) while leaving the scene, Henson accepted an
envelope containing approximately $400.00 in cash.
            Without controverting the warrant affidavits, the defense called Henson's father as its sole
witness, presenting evidence of Henson's lifelong Texarkana residence and of his employment in
various jobs since attending high school. The evidence also indicated that, although Henson has a
brother living overseas and a sister living elsewhere in Texas, the other members of Henson's
immediate and extended family live in Texarkana. Henson's father testified that he could arrange
to pay only $2,500.00 toward posting Henson's bond, that Henson himself has no assets except a car
worth $500.00, and that no other family members are in a position to help post bond. On cross-examination, Henson's father admitted not having spoken with a bondsman about posting bond for
Henson. 
Representative Cases
            Contending the bond set in this case is excessive, Henson cites numerous appellate court
decisions—none of which are more recent than 1991—in support of his contention that reasonable
bail should not exceed $50,000.00. In fact, Henson argues, the Texas Court of Criminal Appeals
"has yet to condone a bail amount even approaching seven figures, even in a capital case," citing
Ludwig v. State, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991). The State responds by citing more
recent decisions in which courts of appeals have upheld bail amounts set as high as $1,000,000.00
in cases where defendants were charged with having committed the offense of capital murder. See,
e.g., Ex parte Saldana, No. 13-01-00360-CR, 2002 Tex. App. LEXIS 536 (Tex. App.—Corpus
Christi Jan. 24, 2002, no pet.) (not designated for publication), overruled in part on other grounds,
Ramos v. State, 89 S.W.3d 122, 126 n.13 (Tex. App.—Corpus Christi 2002, no pet.); Ex parte
Brown, No. 05-00-00655-CR, 2000 Tex. App. LEXIS 4656 (Tex. App.—Dallas July 13, 2000, no
pet.) (not designated for publication). In still other cases cited by the State, courts of appeals have
upheld bail settings ranging from $250,000.00 to $500,000.00. See, e.g., Ex parte Chachere, No.
03-01-00404-CR, 2002 Tex. App. LEXIS 453 (Tex. App.—Austin Jan. 25, 2002, no pet.) (not
designated for publication); Ex parte Richardson, No. 05-99-01899-CR, 2000 Tex. App. LEXIS 715
(Tex. App.—Dallas Jan. 31, 2000, pet. ref'd) (not designated for publication).
            In Brown, the Fifth District Court of Appeals concluded Brown failed to show the
$1,000,000.00 bond set by the lower court was excessive. Brown, 2000 Tex. App. LEXIS 4656, at
*3–5. The only evidence available to that court, however, was the seriousness of the offense itself,
the possible range of punishment, some of the details of aggravating circumstances, and
uncontroverted testimony that Brown posed a threat to his estranged wife and to the community in
general. Id. at *4–5. We also note Brown wielded a gun and admitted he personally committed the
violent crime with which he was charged. Id. Unlike Henson, Brown failed to present any testimony
relating to the factors laid out for consideration in either Article 17.15 or in Rubac, as discussed
above. Therefore, the record contained no evidence regarding Brown's work record, community ties,
length of residency in Texas, or his ability to make bail. Id.
            Although evidence in these categories was offered for the court's consideration in Ex parte
Saldana, the Thirteenth District Court of Appeals still held there was no abuse of discretion in
setting a $1,000,000.00 bond. Saldana, 2002 Tex. App. LEXIS 536, at *15. Saldana was a lifelong
resident of Corpus Christi, who voluntarily surrendered himself on discovering that a warrant was
outstanding for his arrest. For these reasons, and because he was regularly employed before his
arrest and had family and community ties to the area, he contended it was an abuse of discretion for
the court to deny his request for bond reduction. Id. at *14. Weighing these factors against the
extremely violent nature of the offense, Saldana's family's ability to previously post a $500,000.00
bond, his membership in the violent Raza Unida gang, and other evidence suggesting he was a flight
risk and a continuing threat to the community, the court ultimately determined that the bond set was
not excessive. Id. at *15–16.
            Unlike the facts presented in Brown and Saldana, where there was no evidence presented
regarding the excessiveness of the bond set or the evidence supporting a reduction was so far
outweighed by the violent nature of the crime, the appellant's criminal history, and the ongoing threat
to the community, the facts in Chachere and Richardson supported a reduced bond amount. Noting
that a $700,000.00 bond was particularly high, even where the appellant was indicted for solicitation
of capital murder, the Third District Court of Appeals reversed a lower court, ordering bond reduced
to $250,000.00. Chachere, 2002 Tex. App. LEXIS 453, at *9–11. Evidence in that case showed (1)
the relative stability of Chachere's employment, family, and community ties; (2) his compliance with
court orders in other matters; and (3) no prior criminal record. Id. at *11. In Richardson, the Fifth
District Court of Appeals upheld a $500,000.00 bond, giving special weight to the nature and
circumstances of the offense committed, and stressing the significance of the appellant's confession
to having deliberately planned and carried out the murder for which he was charged. Richardson,
2000 Tex. App. LEXIS 715, at *4–5.
            In this case, the trial court cited Ex parte Chavfull, 945 S.W.2d 183 (Tex. App.—San
Antonio 1997, no pet.), as authority for setting a $750,000.00 bond for each of the three counts of
capital murder. We attach significance to the fact that Chavfull not only personally killed during a
robbery, but also had a prior conviction, was suspected in other crimes, and was known to have
previously associated with dangerous people.


 Id. at 186–87. These key factors distinguish Chavfull
from the allegations against Henson.
            In another Ex parte Brown, 959 S.W.2d 369 (Tex. App.—Fort Worth 1998, no pet.), we find
an appellant more similarly situated to Henson in that this Brown was accused of participating in a
robbery in which a victim was killed. Although Brown participated in the robbery, the evidence
indicated he stood by as his confederate strangled and stomped the victim to death. Id. at 370. There
was no evidence Brown had been convicted of a crime or accused of participating in other crimes
or of previously fraternizing with dangerous people; nevertheless, considering his relative mobility, 
 
the violence of the crime, and the potential threat to the community, the Second District Court of
Appeals upheld a $500,000.00 bond. Id. at 372–73.
Analysis
            Ultimately, the appropriate amount of bail must be determined on a case-by-case basis. 
Certain similarities between the case at bar and those already discussed allow for comparison, yet
none of the decisions previously cited directly address the appropriate amount of bail under the
circumstances before us. We conclude the bond set in this case is not supported by relevant caselaw.
            Henson presented at least some evidence regarding Article 17.15 and Rubac factors. There
is no evidence Henson has previously been able to post a significant bond or has ever had occasion
to do so. The record contains no evidence Henson has ever been convicted, charged, or linked with
criminal activity, was part of a gang, exhibited prior violent behavior, or previously associated with
violent people. The evidence also fails to suggest Henson personally wielded the murder weapon;
instead, he was reportedly outside the office door when the fatal shots were fired. Testimony at the
habeas corpus hearing also indicates that Henson's family and community ties to the area are fairly
strong, that he is a lifelong Texarkana resident, and that his family resources are limited. We also
see evidence of family stability in Henson's brother coming forward with the report that led the
authorities to charge Henson.
            On the other hand, we are mindful of the gravity of the crime committed in that, unlike the
situations presented in Chachere and Richardson, where the offenses committed included solicitation
of capital murder or capital murder of a single individual, this case alleges the intentional killing of
three individuals, apparently for financial gain. While Henson may not have been the shooter, there
is no indication that his companion's reportedly having the weapon at the scene was a surprise to
him. In fact, the evidence suggests that, after hearing the shots and seeing his companion emerge
from the back office with blood on his shirt and shoes, Henson nevertheless left the scene with him
and received from him a share of the money taken from the restaurant. Even the evidence touching
on factors other courts have used to reduce or support lower bond amounts is somewhat
unsatisfactory. The only witness offering such testimony at the habeas corpus hearing was Henson's
father, who offered testimony quite similar to parental testimony previously referred to by the Fourth
District Court of Appeals as "inconclusive."


 Chavfull, 945 S.W.2d at 186.
            In the absence of evidence that Henson personally committed the violence in this case,
previously committed or has been previously charged with other crimes, was guilty of prior violent
behavior or prior association with violent people, or intended or anticipated the killings in this case,
we conclude the setting of a $750,000.00 bond per count is without precedent, and the amount
should be reduced. Considering the nature of the offense and the circumstances under which it was
committed, however, caselaw clearly supports setting bond at a level sufficiently high to guard the
future safety of the community. The uncontroverted warrant affidavits set forth a violent,
unprovoked killing of three innocent and unsuspecting individuals during the commission of an
aggravated robbery. The evidence of Henson's Rubac factors is weak, and Henson faces the
possibility, if convicted, of either life in prison or the death penalty. See Maldonado v. State, 999
S.W.2d 91, 95 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) ("In considering the nature of the
offense, it is proper to consider the possible punishment.") (quoting Ex parte Charlesworth, 600
S.W.2d 316, 317 (Tex. Crim. App. 1980)).
            Under the circumstances, we hold the amount of the bond set by the trial court is unsupported
by legal precedent. We order that the bond be reduced to $500,000.00 for each of the three counts
of capital murder, for a total bond of $1,500,000.00.
 
                                                                                    BY THE COURT
Date Submitted:          February 19, 2004
Date Decided:             March 17, 2004

Publish


 none of which were specifically addressed by Brown in her brief. 
Brown's "ordinary care" argument does not address the specific elements of the negligent
misrepresentation theory.
            We affirm the judgment.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 20, 2006
Date Decided:             May 4, 2006