MEMORANDUM OPINION

 

No. 04-10-00701-CR

No. 04-10-00702-CR

 

Ex Parte Thomas Castillo

 

From the 227th
Judicial District Court, Bexar County, Texas

Trial Court Nos. CM961566
& CM961565

Honorable Andrew
Carruthers, Judge Presiding

 

Opinion by:   Sandee Bryan Marion, Justice

 

Sitting:                     Sandee Bryan Marion, Justice

                     Rebecca
Simmons, Justice

                     Marialyn
Barnard, Justice

 

Delivered and
Filed:  December 22, 2010

 

AFFIRMED

 

This is an accelerated
appeal from the trial court’s decision on appellant’s application for writ of
habeas corpus seeking a reduction in bail.  We affirm the trial court’s order.

BACKGROUND

Appellant, Thomas
Castillo, was charged with capital murder and burglary of a habitation.  When
bail was originally set for $1 million on each charge, appellant filed his
application seeking a bail reduction.  Following an evidentiary hearing, the
trial court lowered the bail on the capital murder charge to $500,000 and on
the burglary of a habitation charge to $50,000.  On appeal, appellant asserts
the trial court erred in setting an excessive bail on both charges, and such
error violated his constitutional right to have bail set at an amount
reasonably calculated to assure his presence at trial. 

DISCUSSION

“The primary purpose or object of an appearance bond
is to secure the presence of a defendant in court for the trial of the offense
charged.”  Ex parte Rodriguez, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980).  Bail should not be set
so high as to be oppressive, but should be high enough to provide reasonable
assurance the defendant will appear at trial.  Ex parte Ivey, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980).  Bail operates to balance the
“presumption of innocence of the accused and the compelling interest of the
State that the accused appear to answer the accusation against him.”  Balboa
v. State, 612 S.W.2d 553, 557 (Tex.
Crim. App. 1981) (Clinton, J., dissenting/concurring in part).  Nevertheless, the burden of proof is on the
defendant to show the bail is excessive.  Rodriguez, 595 S.W.2d at 550.  

In claiming that the
amount of bail in this case was oppressively high, appellant cites to several
older cases involving different offenses in which the reviewing court reduced
the bail amount to less than $100,000 after finding that the trial court’s bail
amount was excessive; while the State points to more recent cases for its
argument that there is a trend towards higher bail amounts.  However, “‘[c]ase
law is of relatively little value in addressing the ultimate question of the
appropriate amount of bail in a particular case’ because appellate decisions on
bail matters are often brief and avoid extended discussions, and because the
‘cases are so individualized that generalization from results reached in others
is difficult.’”  Ex parte Beard, 92 S.W.3d 566, 571 (Tex. App.—Austin
2002, pet. ref’d) (internal citation omitted).  Therefore, we look first to the
statutory rules that guide a bail determination.

The amount of bail
required in any case is within the discretion of the court, judge, magistrate,
or officer taking the bail, subject to the following rules:

1.
The bail shall be sufficiently high to give reasonable assurance that the
undertaking will be complied with.

2.
The power to require bail is not to be so used as to make it an instrument of
oppression.

3.
The nature of the offense and the circumstances under which it was committed
are to be considered. 

4.
The ability to make bail is to be regarded, and proof may be taken upon this
point.

5.
The future safety of a victim of the alleged offense and the community shall be
considered.

 

Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005).  In addition, the following
factors may also be considered: the accused’s work record, family and community
ties, length of residency, prior criminal record (if any), and any aggravating
circumstances alleged to have been involved in the offense the accused is
charged with committing.  Ex parte Rubac, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981).  

1.        Nature
of Offenses 

           The
State alleged[1] appellant broke into the house of Rojelio Nava, who
was the boyfriend of appellant’s estranged wife Carol Sanchez.  Appellant
watched as Nava and Carol entered the house, at which time he stabbed both of
them.  Nava died from multiple stab wounds to the back of his head and his
back.  Carol, who survived the attack, was stabbed ten times.  The punishment
for capital murder is life in prison or death.  Tex. Penal Code Ann. §
12.31(a) (West Supp. 2010).  Because appellant faces life without parole or the
death penalty on the capital murder charge, the motivation to flee is a factor
warranting a high bond.  The trial court may have concluded that the bond set
was reasonable based on the seriousness of the offenses and the severity of the
potential punishment. 

2.        Future Safety of Carol and the
Community

           Although present in the courtroom, Carol did not testify at the
hearing.  Her sister testified, and when asked her feelings about appellant
getting out on bond, she responded that she did not want him out “because [she]
knew [appellant] since the day that my sister and [he] got together.”  She also
said her family was “devastated.”  

           The
investigative report states Carol and appellant had been married for nine
years, but had known each other for fourteen years.  They separated in May
2010.  During the separation, Carol met Nava, the two began an intimate
relationship, and Carol moved into Nava’s home.  In June 2010, Carol decided to
move back in with appellant and appellant helped her move her possessions out
of Nava’s house.  According to the investigative report, this provided
appellant with access to the layout of the house.  In July 2010, Carol decided
to move back into Nava’s home.  While appellant was not home, Carol called a
friend to help her move her possessions, but appellant arrived home and confronted
Carol.  According to the report, appellant grabbed a box cutter and threatened
to cut Carol’s face if she left.  After arguing, appellant slashed two sofas
and left the house when Carol called the police.  On August 14, 2010, the
couple again met, this time at their son’s baseball banquet.  As Carol was
leaving the banquet, appellant grabbed her arm and allegedly said “I’m going to
kill you.”  On August
15, 2010, appellant allegedly stabbed and killed Nava and stabbed Carol ten
times.  The trial court may have concluded that the bond
set was reasonable based on Carol’s continued vulnerability to attack.

3.        Ability
to Make Bail

           Appellant’s mother, Thelma Castillo,
said he would live with her if he were released on bail.  Castillo, who has
appellant’s power of attorney and was familiar with his finances, continues to
make the mortgage payments on the house owned by appellant and Carol, but she
said they were in danger of foreclosure because she is one month behind on the
payments.  The house is valued at $64,500, but $46,194 is still owed on the
mortgage.  Appellant’s mother has looked into selling the house, with an offer
at $70,000, but only about $24,000 would come to appellant and Carol.  Nothing
indicates Carol would agree to the sale of the house and she has taken all the
furniture in the house.  Appellant has one bank account with a balance of five
dollars; he has no credit cards; he owns stock through his employer but he
cannot access the stock until three years after he leaves his employment; and his
401K has an approximate balance of $4,000.  He owns two vehicles, a 1998 truck
that he drove and a 2007 Equinox driven by and in the possession of Sanchez. 
The truck has only a “salvage title.”  Appellant’s mother has contacted three
bonding companies, each of which told her they would require ten percent of the
bond plus collateral.  Appellant’s parents have nothing to contribute towards
the ten percent because she and her husband live paycheck-to-paycheck.  Each of
appellant’s sisters could contribute $5,000. 

           An accused’s ability to make bond is
one factor to be considered in determining the appropriate amount of bail.  Tex. Code Crim. Proc. Ann. art.
17.15(4); Ex parte Brown, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth
1998, no pet.).  An accused’s inability to secure bond for the bail set by the
trial court does not automatically render the bail excessive.  Brown,
959 S.W.2d at 372.  Here, appellant provided evidence supporting his claimed
inability to make bail in the amount of $550,000 and evidence regarding his mother’s
unsuccessful efforts to secure bond.  

4.        Other Factors

           Appellant is thirty years old, was born
in San Antonio, and has lived here his entire life. He does not have a passport
and has never been out of the country.  Appellant graduated from the same high
school as his mother, who is a bailiff employed by the Bexar County Sheriff’s
Department.  Appellant’s mother and father both live in San Antonio, and have
been married for thirty-two years.  Appellant’s father is disabled.  Appellant
has two sisters, both a few years younger than him; both are married and live
in San Antonio.  One of his sisters is also a bailiff with the Bexar County
Sheriff’s Department, and she is married to a Bexar County Sheriff’s Department
detention officer.  The alleged offenses occurred around 2:55 a.m. on August
15, 2010.  Appellant fled to Corpus Christi.  After his mother was notified of
the offenses by a detective, she located her son in Corpus Christi and drove
there to get him.  They drove straight to the Bexar County jail where appellant
turned himself in the same day at 1:45 p.m. Appellant’s mother said appellant
had no family in Corpus Christi.

           At the time of his arrest, appellant and
Carol had owned their home for ten years, which is where appellant lived until
his arrest.  They have three children, all under the age of twelve.  The
children lived with appellant until about three months before his arrest, and
then lived with their mother and Nava.  Appellant did not testify, but his mother
described his relationship with his children as very close, stating he is
actively involved with his children’s school and he coached for the Pop Warner
organization and the children’s various activities.  Appellant has worked for
the same employer for about eleven years as a painter and journeyman, earning
$15.75 per hour.  Appellant’s mother said she has eleven siblings, all of whom
live in San Antonio, and appellant has thirty-two cousins.  She described the
family ties as “close.”  Appellant has never been arrested or convicted for any
offense, and has never belonged to a gang. 

           The safety supervisor for appellant’s
employer testified appellant supervised the company’s paint shop and he would
see appellant almost every day, two to four times a day.  He described
appellant as “consistent with his job,” which included working in a building
that was not air-conditioned.  He said appellant would work all day in the
shop, the temperature in which could reach 100 degrees, and then leave to
assist in coaching his sons’ baseball games.  He also described appellant as
“quiet, soft spoken.”  He said he would be surprised by the allegations that
appellant stabbed a man to death and stabbed his estranged wife.  Another
co-worker, who has known appellant for sixteen years and worked with him for
eleven years, described appellant as dependable and a great dad.  He believed
appellant would show up for court as necessary because of appellant’s work
ethic and because appellant was always at work when he was needed.

           Sandra Pacheco, who lived next door to
appellant for eleven years, did not believe appellant was dangerous to anyone,
and she described appellant as family-oriented because he was always with his
children when he got home from work and he was involved with the boys’ sports
and his daughter’s cheerleading.  She had no doubt appellant would return to
court as necessary if he were released from jail.  She did not know appellant
had fled to Corpus Christi the night of the alleged offenses until the State
asked her on cross-examination.  However, on re-direct, when she was told he
voluntarily turned himself in the next day, she said, “he’s the person that
would do that.” 

CONCLUSION

           After
hearing all the evidence, the trial court reduced bail, from $1 million on each
charge, to $500,000 on the capital murder charge and $50,000 on the burglary
charge.  We must review a trial court’s ruling on the setting of bail under an
abuse of discretion standard of review.  See Rubac, 611 S.W.2d at 850. 
Reviewing all the above factors in light of the standard of review, we cannot
say the trial court abused its discretion in setting the amount of bail as it
did; and therefore, the trial court did not violate appellant’s constitutional
rights.  Therefore, we overrule appellant’s issues on appeal and affirm the
trial court’s judgment.

 

Sandee Bryan Marion, Justice

 

Do not publish









[1]  The State’s evidence was derived
primarily from an investigative report that contained allegations which may not
necessarily be admissible in a criminal trial.  See Tex. R. Evid. 101(d)(1)(E) (Texas Rules
of Evidence do not apply

in a hearing to lower bail). 
However, for the purpose of setting bail, the trial court considered the
evidence; and for the purpose of this opinion, we recite the allegations
contained in the report.