

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00020-CR
No. 02-21-00021-CR

———————————————————

## Ex parte Adam Matthew Hammond

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court Nos. 60015-B*1-2, 61301-B*1-3

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Adam Matthew Hammond stands accused of the aggravated sexual assault of his eight-month-old son, two counts of indecent exposure with his son, threatening to retaliate against the child's mother (Mother) for reporting the alleged abuse, and animal cruelty. *See* Tex. Penal Code Ann. §§ 21.11(a)(2), 22.021(a)(1)(B)(iii), 36.06(a)(1)(B), 42.092(b). Bail was set at $35,000 for the aggravated-sexual-assault charge, $15,000 for each indecency-with-a-child charge, $5,000 for the retaliation charge, and $2,500 for the animal-cruelty charge, totaling $72,500.

Since his March 2018 arrest, Hammond has not posted bail. In February 2021, he applied for a bail reduction through a writ of habeas corpus, arguing that the bail amounts were excessive, oppressive, and beyond his financial means. The trial court held a hearing, considered the parties' arguments and evidence, and declined to reduce his bail. Because we cannot conclude that the trial court erred by declining to reduce his bail, we affirm the trial court's order.

### Background

Hammond called two witnesses to testify on his behalf: his grandmother, Justine Hammond, and his mother, Erin Hammond. The State did not call any witnesses but offered exhibits, including two probable-cause affidavits, two arrest-warrant affidavits, and five disciplinary incident forms from the jail. The exhibits were admitted into evidence by the trial court without objection.

## I. The allegations against Hammond

The following is a cumulative recitation of the facts as presented in the probable-cause and arrest-warrant affidavits admitted into evidence:

On the morning of March 27, 2018, Mother called police to report Hammond's sexual abuse of their eight-month-old son. She reported to the responding officers that Hammond had sexually assaulted their son that morning by putting his mouth on their son's penis.[1] She also described an ensuing argument in which he allegedly threatened to attack police officers, "smash her head in," destroy property, and kill their dogs if she reported the incident to police.[2] According to Mother, Hammond initially denied abusing their son that morning, but then "admitted to doing it by saying 'he couldn't help himself' and that 'he has an attraction to their son'" and that was why he regretted having a child. Officers arrested Hammond later that day, and he confessed in a police interview to placing his mouth on his son's penis that morning.

When confronted with his confession, Justine posited that he confessed under a state of duress, questioned Mother's credibility, and recounted an incident when she heard Mother threaten Hammond by telling him, "If you don't give me that [tax-refund]

---

[1]Mother also told the officers that on an earlier occasion she had discovered Hammond masturbating in the shower with their son present.

[2]Mother also stated that afterwards she had heard him kicking their dogs and that he had injured one to the point it was unresponsive and appeared to be barely breathing.

money, I'm going to say you molested our son." She also claimed that Mother had accused her own father of molesting her and had threatened suicide "several times."

In what seemed to be an attempt to buttress Justine's duress claim, Erin described Hammond as seeming "disassociated" and "under . . . a cloud" after his arrest. But she also testified that he became "more cognizant" and "was himself again" after she spoke to him.

## II. Hammond's background and lack of financial resources

Hammond is 21 years old and until recently he lived most of his life in Waurika, Oklahoma, about 35 minutes from Wichita Falls. None of his family lives in Waurika anymore—his brothers, sisters, Justine, and Erin now live in Wichita Falls and the surrounding area. Hammond never graduated from high school, and he had worked at a Wichita Falls fast-food restaurant in the three to four months before his arrest.

Justine and Erin testified that Hammond owned no valuable property, such as a home, a vehicle, jewelry, or appliances that he could sell in order to post a bond. Nor was Justine aware of any money set aside, either by Hammond or anyone else, that he could use to post bond; Erin confirmed that the family did not have the money to do so. But Justine testified that she gives him $30 to $60 a month through his commissary to purchase basics like "hygiene products and clothes."

Though Hammond has no significant criminal history,[3] exhibits showed that Hammond had been cited in jail twice for fighting with other inmates, twice for refusing to follow written or oral directives, and once for hoarding medication and introducing tobacco to the unit.

Erin admitted that Hammond had been in fights with his stepfather in the past but attributed them to his being a "bull-head teenager." On cross-examination, she agreed that Hammond had problems with the stepfather as an authority figure and that he reacted somewhat violently with him.

With regard to Hammond's mental health, Erin testified that Hammond had expressed suicidal thoughts "quite often" starting when he was 15 years old and that he expressed such thoughts after his arrest but "not as much."[4] And, according to Erin, Hammond received "several [daily] medications"—ostensibly addressing mental health issues—while in jail. Erin testified that the family had urged Hammond to get treatment at some point before his arrest, but he "made excuses not to go," and she admitted that she could not "force" him to seek help. Erin also acknowledged that Hammond did not have an established mental healthcare provider outside of jail.

---

[3]During her testimony, Justine alluded to a misdemeanor theft he committed as a juvenile.

[4]Erin also admitted that suicidal thoughts could be brought on by feelings of extreme guilt.

5

Erin believed Hammond could follow any bond conditions put in place, including having no contact with his child or any other child. She also expected that he would comply with the requirement that he wear an ankle monitor, expressing doubt that he would attempt to flee anyway, because he had told her that "he wants to fight them because he did not do it."

## III. The parties' arguments and the trial court's decision

Even though Hammond's counsel admitted that his bails were "not terribly high," he stressed that Hammond had been in jail for almost three years[5] and did not have the ability to post a bond to meet the required bails. He also asserted that Hammond had been in a "mental health crisis" at the time he confessed, and that Mother had made previous false accusations. The State responded by labeling the bail amounts as "shockingly reasonable," questioning whether the family could ensure he would return to court when they had been previously unsuccessful in persuading him to get mental-health help, asserting that his release could endanger children in the community, and pointing out inconsistencies in Erin's and Justine's testimony that may have undermined their credibility. The State also requested a special setting in light of Erin's testimony that Hammond desired to have the case heard quickly.

---

[5]Hammond's counsel did not imply any misconduct by the State related to any delay of a final trial.

6

After taking the application under advisement, the trial court denied the requested relief.

## Discussion

### I. Applicable law and standard of review

The primary purpose for setting bail is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The amount should be sufficiently high to give reasonable assurance that the defendant will comply with the undertaking but should not be set so high as to be an instrument of oppression. *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977). In setting bail, courts are to consider certain factors including the length of the sentence and nature of the offense, including any aggravating factors; the defendant's work history, family ties, and length of residency; the defendant's ability to post the bond; any prior criminal record; and conformity with past bond conditions. Tex. Code Crim. Proc. Ann. art. 17.15; *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981).

In contesting the amount of bail, the defendant has the burden to show that it is excessive. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). We review the trial court's decision in setting bail for an abuse of discretion, and we will not disturb its decision if it is within the zone of reasonable disagreement. *Ex parte Wood*, 308 S.W.3d 550, 552 (Tex. App.—Beaumont 2010, no pet.).

## II. Application

### A. Nature of the offenses and possible sentences

The nature of the offenses and the possible sentences are the "primary factors" we consider in evaluating a bail decision. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd). The charges against Hammond are unquestionably serious. Most serious is the charge of aggravated sexual assault, a first-degree-felony for which, if convicted, Hammond faces a minimum 25-year sentence and a maximum life sentence without the possibility of parole. *See* Tex. Penal Code Ann. §§ 12.32 (setting maximum punishment for first-degree felony at life sentence and a fine up to $10,000), 22.021 (designating aggravated sexual assault as a first-degree felony and increasing minimum sentence to 25 years if the victim is younger than 6 years old); Tex. Gov't Code Ann. § 508.145 (excluding aggravated-sexual-assault convictions from parole eligibility if victim is under 6 years old). If convicted of any of his other charges, he faces two to ten years' incarceration on each conviction. *See* Tex. Penal Code Ann. §§ 12.34 (setting punishment range for third-degree felonies at two to ten years' incarceration and a fine up to $10,000), 21.11(d) (designating indecency with a child by exposure as a third-degree-felony offense), 36.06(c) (designating retaliation as a third-degree-felony offense), 42.092(c-1) (designating animal cruelty, as charged in this case, as a third-degree-felony offense).

The nature of the offenses is especially serious considering that his son was only eight months old at the time of the alleged assault. Given the seriousness of the charges

and the potential of a lengthy prison sentence, there is a heightened interest in securing Hammond's appearance at trial. *See In re Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.). And though Justine and Erin believed that he has been falsely accused and that his confession was the result of duress or a "mental health crisis," the trial court, as the factfinder for purposes of the habeas hearing, was in the best position to weigh their credibility and the evidence as a whole, and to consider it in the context of the goal of securing his appearance at trial. *Cf.* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

Given the seriousness of the charges against him, especially the aggravated sexual assault to which Hammond has confessed, and based on the record before us, we cannot conclude that the trial court erred by weighing these factors in favor of the bail amounts as set.

### B. Hammond's local ties

Hammond established that although he grew up just across the border in Oklahoma, his family now lives in the Wichita Falls area. Justine and Erin assured the trial court that they would ensure that he complied with any bond conditions and attended court hearings, but Erin also admitted that they had been previously unsuccessful in convincing him to seek mental-health treatment. And while he was previously employed at a fast-food restaurant, the State pointed out that any further employment in such a context would risk his exposure and interaction with children in the community.

9

Any strength attributable to his family ties in the area were also weakened by evidence of his struggles with suicidal ideations. *See Ex parte Garner*, No. 10-18-00129-CR, 2018 WL 3469834, at *4 (Tex. App.—Waco July 18, 2018, no pet.) (mem. op., not designated for publication) (noting defendant's suicide threats rendered her a flight risk and danger to the community and citing similar holdings). Erin admitted that he did not have any mental healthcare provider outside of jail.

Based on the record before us, his work history, family ties, and length of residency do not weigh in favor of a lower bail amount.

## C. Ability to post bond

Hammond's cumulative bail obligation is $72,500, and if Hammond cannot meet that obligation, this factor would weigh in his favor. But while Justine and Erin testified that Hammond did not have the money to post such a bond, they provided no evidence that they had contacted any bondsman regarding the minimum amount required to do so or made any other effort to post bail. *See Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd) (noting that it is incumbent upon the applicant to show that he has made an effort to furnish bail in the amount set).

Even assuming—as Hammond's counsel did—that the minimum would be around $7,250, Hammond's inability to fund such a bond is not dispositive to whether his bail should be lowered. *See Ex parte Jones*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991). A defendant's simple inability to meet the bail set by the trial court does not automatically render it excessive; to hold otherwise would completely eliminate the trial

court's role in setting bond and place the accused "in the unique posture of determining what his bond should be." *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.) (quoting *Ex parte Miller*, 631 S.W.2d at 827); *see also Ex parte Branch*, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977); *Ex parte Cardenas*, 557 S.W.3d 722, 734 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.); *Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

Simply put, based on the record before us, this factor does not demand lower bail amounts than those already set.

## III. Conclusion

Based on our thorough review of the record in light of the relevant factors, we cannot conclude that Hammond met his burden to show that the bail amounts are excessive. Accordingly, the trial court did not err by declining to lower Hammond's bail, and we affirm the trial court's order.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 10, 2021