

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00537-CR

_____

EX PARTE JOSHUA COOK

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 189,591-C

Before Gabriel, J.; Sudderth, C.J.; and Womack, J.
Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

Joshua Cook appeals from the increase in his pretrial bond amount without notice and from the trial court's order denying his habeas corpus application in which he requested a reduction in the set bail amount for the charged offense of murder. Although Cook failed to preserve his first complaint, we conclude that the trial court abused its discretion by failing to reduce the bail amount based on the proffered evidence and reverse that portion of the trial court's order with instructions to set a reasonable bail for the murder charge.

## I. BACKGROUND

On November 3, 2018, Cook called 911 to report that his girlfriend had been shot and that he believed she was dead. When the police officers arrived, they found Cook crouching over his girlfriend's body with a gun in his right hand. He was arrested at the scene and charged with murder. The next day, bail was set by a magistrate at $100,000. *See* Tex. Code Crim. Proc. Ann. art. 15.17(a). On November 5—the day after bail had been set—the State filed a motion to declare the set amount insufficient, alleging that Cook was a flight risk because he had significant ties to the Midland/Odessa area based on his previous work there and that law-enforcement officials believed Cook "may be suicidal." *See id.* art. 16.16.

From the record it appears that on the same day the State filed its motion, a justice of the peace admonished Cook of his "rights" as indicated on a "Certification of Magistrate's Warning, Probable Cause Determination, and Order Setting Bond"

(the certification). The certification contains the signature of the justice of the peace, but not Cook's, and reflects that Cook's bail amount was set at $750,000. The certification further shows that Cook was indigent and was given the forms to request a court-appointed attorney.

Although the record does not reflect when Cook was appointed counsel, Wichita County's Office of the Public Defender filed a habeas corpus application requesting a bail reduction on November 19. *See id.* arts. 11.01, .23. At that point, Cook was also confined on a charge of burglary of a habitation for allegedly entering a home without permission to steal the gun used in his girlfriend's death. Bail for that offense had been set at $100,000. The sole issue raised in Cook's application was that Cook's confinement was illegal because the set bail amounts were excessive, oppressive, and beyond his financial means, violating the United States and Texas Constitutions and the code of criminal procedure.

The trial court held a hearing on Cook's application on December 13. Cook's mother, Teresa, testified that she did not believe her son had any financial resources that would enable him to pay a bail bond. She explained that when the set bail amount for murder was $100,000, she and other family members were trying to raise the money to pay a bail bond. She testified that "if [she emptied] all of [her] accounts" she would have $3000 to $4000 and would not have the funds to post bonds for $850,000. Teresa described her son as a "good boy," not a violent individual, whose only problem with the criminal justice system had been a marijuana

3

charge as a juvenile. She told the court that her son would live with her, her mother, and other family members in Wichita Falls; that she would assist her son with complying with all conditions of a pretrial release; and that she would report to the court if he did not. Teresa testified that her son's close ties were in Wichita County and not in Odessa, where he had worked in an oil field only for a few months in early 2018.

Cook introduced several exhibits into evidence at the hearing, including the State's motion to declare the bond insufficient and the subsequent order raising the bail amount for murder to $750,000. He admitted, without objection, an exhibit entitled "Recommended Felony Bail Amounts" adopted for "use of all judges and magistrates in Wichita County, Texas" and signed by the three district judges in Wichita County. This exhibit reflects a recommended bond amount for murder to be $100,000 and for capital murder to be $500,000. Cook also admitted a video of a televised news story that included an interview with the justice of the peace who signed the certification raising the bail amount and with the parents of Cook's girlfriend. Her parents expressed a strong opinion that Cook's bond be set high so that he would have to remain in jail. Cook also introduced the recording of the 911 call he made.

Cook testified for the limited purpose of the bail-reduction hearing. He stated that he was 19 years old and had dropped out of high school. He told the court that he worked as a mechanic and had worked in the oil fields. He explained that he

4

worked in Wichita Falls except for "about five months" when he worked in the Midland/Odessa area and that his close community ties were in Wichita Falls. He further explained that even while working in the Midland/Odessa area, he worked with people who were "mostly" from Wichita Falls. Cook's testimony conformed to Teresa's—he could not afford to post bonds for $850,000 and that he would comply with whatever pretrial release conditions were set including using an ankle monitor, submitting to drug tests, and refraining from contact with his girlfriend's family.

In closing arguments to the court, Cook's counsel argued that the manner in which Cook's bond was raised from $100,000 to $750,000 was accomplished without due process, specifically because there was no hearing on the State's motion, no evidence presented, and no opportunity for Cook to contest the evidence. Counsel argued that these failures were evidence that the raised amount was impermissibly designed to keep Cook in jail and was oppressive. Cook's counsel referred the court to the recommended felony bail amount for murder in Wichita County, which was the $100,000 originally set.

The State argued that Cook was a flight risk because he was facing life in prison and because he "has experienced living for long periods of time away from home, away from the community, in another community in which he is familiar, in which he has made acquaintances and met people that are outside of this community."

The trial court denied the application as to the murder charge and ordered the bail amount to remain set at $750,000. The court granted the application as to the

5

burglary charge and lowered the set bail amount to $10,000. Cook then appealed the trial court's denial, and we requested briefing. *See* Tex. R. App. P. 31.1.

## II. THE NOVEMBER 5 INCREASE

In Cook's first issue, he seems to complain that by raising the murder bond amount without notice, a hearing, or the assistance of counsel, the magistrate violated his constitutional rights to counsel and due process. As a result of these violations, Cook concludes that the "trial court should have noted these constitutional violations and lowered [his] bond to a reasonable amount as an appropriate remedy."

Cook did not raise this due-process issue in his written application for habeas relief. Instead Cook solely based his request for relief on his argument that the $750,000 amount was excessive, oppressive, and beyond his financial means. While counsel for Cook did make reference to the circumstances surrounding the increase in the bond in argument to the court, he did not argue for relief based on a due-process violation. He simply argued that the increase was designed only to ensure Cook remained confined, which demonstrated the oppressive nature of the amount. Further, the record does not reflect that the trial judge believed relief was being requested based on a constitutional due process violation or that he addressed the merits of such claim.

Although it is difficult to discern the exact nature of Cook's first issue, we construe it to be a request for relief based on allegations of a due-process violation when the bail amount for murder was increased by the justice of the peace. *See* Tex.

6

R. App. P. 38.9. By failing to include this ground in his habeas corpus application or to argue it specifically to the court, Cook failed to preserve this argument for our review. *See* Tex. R. App. P. 33.1(a); *see Ex parte Tucker*, 977 S.W.2d 713, 715 (Tex. App.—Fort Worth 1998) ("An order denying habeas relief on the merits is appealable only with regard to those matters properly raised by the pre-trial habeas corpus petition and addressed by the trial court."), *pet. dism'd*, 3 S.W.3d 576 (Tex. Crim. App. 1999) (per curiam). Because this issue was not specifically included in the application for writ of habeas corpus or otherwise properly raised in the trial court, it may not be raised for the first time on appeal. *See, e.g.*, *Hughes v. State*, 16 S.W.3d 429, 431 (Tex. App.—Waco. 2000, no pet.); *Ex parte Torres*, 941 S.W.2d 219, 220 (Tex. App.—Corpus Christi–Edinburg 1996, pet. ref'd.). We are therefore barred from addressing the merits of this argument.

## III. DENIAL OF HABEAS CORPUS APPLICATION

### A. STANDARD OF REVIEW AND GOVERNING STATUTES

Setting a bail amount is a fact-driven determination that must be judged on a case's own unique facts. We review a trial court's decision in setting bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). In this review, we look at the evidence in the light most favorable to the trial court's ruling. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007). We will not disturb the trial court's ruling if it was within the zone of reasonable

7

disagreement. *Ex Parte Wood*, 308 S.W.3d 550, 552 (Tex. App.—Beaumont 2010, no pet.).

The primary purpose of bail is to assure the presence of a defendant in court for trial of the offense charged. *See* Tex. Code Crim. Proc. Ann. art. 17.01; *Ex Parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). In setting a bail amount, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.). The accused has the burden to show that the bail amount is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

The court's discretion in setting the amount of bail is governed by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. Other circumstances to be considered in determining the amount of bail include the accused's work record, family and community ties, length of residency, prior criminal record, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense. *See Rubac*, 611 S.W.2d at 849–50.

## B. APPLICATION OF ARTICLE 17.15 AND *RUBAC* CIRCUMSTANCES

It is appropriate to consider the nature and surrounding circumstances of the charged offense when setting the amount of pretrial bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(3); *Ex parte Davila*, 623 S.W.2d 408, 409 n.2 (Tex. Crim. App. [Panel Op.] 1981). And when considering the nature of the offense, the maximum punishment permitted by law may be considered. *See Ex parte Clark*, 537 S.W.2d 40, 42 (Tex. Crim. App. 1977). In this case, Cook is charged with murder and if convicted, faces a range of five to ninety-nine years or life in prison with an optional fine of not more than $10,000. *See* Tex. Penal Code Ann. §§ 12.32, 19.02. Looking at the facts of this case, there is evidence in the record of a senseless death—the question being whether it was a criminal act or an accident. *See id.* § 8.02. The allegations of the case substantiate the court's determination to set the bail in a high amount, yet not one that is unreasonable. *Ex parte Peyton*, No. 02-16-00029-CR, 2016 WL 2586698, at *5 (Tex. App.—Fort Worth May 5, 2016) (mem. op., not

designated for publication), *pet. dism'd*, No. PD-0677-16, 2017 WL 1089960 (Tex. Crim. App. Mar. 22, 2107) (per curiam) (not designated for publication).

Cook's ability to satisfy a bond is another factor to be considered by the court. Although the ability to meet a bond must be considered, it is not dispositive. *See* Tex. Code Crim. Proc. Ann. art. 17.15(4); *Ex parte Jones*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991). It is undisputed that Cook is indigent. The only testimony concerning his ability to post a bond was from Teresa. Cook's family was having difficulty putting together the funds to secure Cook's release when his bail was set at $100,000 and had no hope after the amount was raised to $750,000. Cook is represented by a public defender, and Teresa testified that if she depleted all her accounts, the most she could afford to pay was $4,000. This factor weighs in favor of a reduced bail amount. *See Peyton*, 2016 WL 2586698, at *4; *Ex parte Briscoe*, No. 02-15-00223-CR, 2015 WL 5893470, at *3 (Tex. App.—Fort Worth Oct. 8, 2015, no pet.) (mem. op., not designated for publication).

Cook and Teresa both testified that Cook's community ties had always been to Wichita County and that he would live in Wichita Falls with family if released. Cook and Teresa assured the court that he would be present for all proceedings and would follow all imposed conditions of release. Despite the State's argument to the trial court that Cook had significant community ties outside of Wichita County, the evidence does not support that position. At most, Cook had worked outside the Wichita County for five months. And Cook testified that his acquaintances at the oil-

10

field job were primarily from the Wichita Falls area. Five months of work in another locale in Texas is insufficient to raise serious concerns that Cook will abscond as argued on appeal. *Cf. Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding bail not excessive partially because "appellant has no ties to this community and neither does anyone in his family"); *Ex parte Brown*, 959 S.W.2d 369, 372–73 (Tex. App.—Fort Worth 1998, no pet.) (finding community ties insufficient to warrant bail reduction where no family members lived in Texas and no evidence defendant was a Texas resident). This factor weighs in favor of a reduced bail amount. *See Peyton*, 2016 WL 2586698, at *4.

It is significant in this case that the collective wisdom of the three district judges in Wichita County concluded that the "Recommended Felony Bail Amounts" for murder should be $100,000, as originally set by the magistrate. The recommended bail amount for capital murder is $500,000. The bail amount set by the justice of the peace is more than seven times the recommended bail amount for murder and $250,000 more than the recommended amount for capital murder. While these recommended amounts are not conclusive and each bail amount must take into account the facts of each case, there was no evidence or even argument to justify the massive deviation from the district judges' recommendation in this case. *Cf. Ex parte Craven*, No. 02-18-00110-CR, 2018 WL 3060199, at *1 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op., not designated for publication) (considering county's bail guidelines in determining appropriateness of set bail amount); *Ex parte*

11

*Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same). Although not an express factor in article 17.15 or *Rubac*, this largely unexplained deviation from the county's bail recommendations shows that the bail amount is oppressive. *See* Tex. Code Crim. Proc. Ann. art. 17.15(2).

We also must consider the future safety of the victim of the offense and the community at large in setting appropriate bail. *See id.* 17.15(5). Other than the circumstances of the charged murder and burglary offenses, the hearing did not develop additional evidence that the circumstances of the offenses themselves were aggravated or unusual, that Cook had any prior instances of violence, or that he was a danger to the community. *Cf. Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding bail of $360,000 for second-degree felony oppressive because it was not justified by any unusual circumstances). Indeed, that was not the tenor of the State's argument, which concentrated on its belief that Cook was a flight risk. This factor shows that the high amount of Cook's bail is not sufficiently related to the community's or the victim's family's safety. *See Peyton*, 2016 WL 2586698, at *5.

The State additionally focuses on the bail amount set in this case compared to amounts that appellate courts have upheld or have reversed in similar cases. The State directs our attention to a case from this court in which we held that a pretrial bond of $750,000 for aggravated assault with a deadly weapon was not oppressive: *Ex parte Murray*, Nos. 02-13-00151-CR, 02-13-00152-CR, 02-13-00153-CR, 2013 WL

12

5425312 (Tex. App.—Fort Worth Sept. 26, 2013, no pet.) (per curiam) (mem. op., not designated for publication). Interestingly, we noted in *Murray* the low value of comparison in determining appropriate bail:

> We note, however, as our sister court has before us, that prior decisions are of 'relatively little value in addressing the ultimate question of the appropriate amount of bail' in a specific case because appellate decisions on bail matters are often brief and avoid extended discussions, and because the cases are so individualized that generalization from results reached in others is difficult.

*Id.* at *3 (quoting *Ex parte Beard*, 92 S.W.3d 566, 571 (Tex. App.—Austin 2002, pet. ref'd)). Here, bail was set for the alleged offense of murder with the accused being a nineteen-year-old man whose only criminal history is a marijuana charge as a juvenile. His family and community ties are in Wichita Falls, and while an innocent person died and it is alleged that Cook murdered her, the considerations in article 17.15 and *Rubac* do not justify a $750,000 bail amount. *Cf. id.* at *7–8 (concluding bail not excessive partially based on trial court's finding that accused was "very much a danger to society"). We decline in this case, particularly based on the record evidence regarding article 17.15 and the *Rubac* considerations, to conduct an exhaustive, case-by-case comparison of bail amounts set for different offenses in different counties.[1]

---

[1]We do note, however, that bail reductions have been ordered by appellate courts even in murder cases. *See, e.g.*, *In re Estrada*, 398 S.W.3d 723, 727–28 (Tex. App.—San Antonio 2008, no pet.) (concluding $1,000,000 bail for capital-murder charge excessive); *Ex parte Henson*, 131 S.W.3d 645, 649–51 (Tex. App.—Texarkana 2004, no pet.) (per curiam) (concluding $750,000 bail for capital murder excessive).

# IV. CONCLUSION

In murder cases, we are ever mindful that the offense charged is a very serious matter carrying with it a correspondingly serious penalty. Counterbalancing this concern are the rights guaranteed an accused under the United States and Texas Constitutions and our obligation to protect those rights. *See Ex parte McDonald*, 852 S.W.2d 730, 735–36 (Tex. App.—San Antonio 1993, no pet.) (per curiam). Based upon constitutional principles, the code of criminal procedure, applicable case law, and the evidence that was before the trial court, we conclude that the $750,000 bail amount was unsupported by the evidence and was excessive; therefore, the trial court abused its discretion by imposing bail in that amount. *See, e.g.*, *Ludwig v. State*, 812 S.W.2d 323, 324–25 (Tex. Crim. App. 1991) (per curiam); *Robertson v. State*, Nos. 12-05-00288-CR, 12-05-00289-CR, 2006 WL 300494, at \*3–6 (Tex. App.—Tyler Feb. 8, 2006, pet. ref'd) (mem. op. on reh'g, not designated for publication).

Accordingly, we reverse that portion of the trial court's order denying Cook's habeas corpus application and remand this case to the trial court (1) to set a reasonable bail; (2) to determine what conditions, if any, should be imposed to ensure Cook's presence at trial; and (3) to allow the State and Cook an opportunity to present any additional evidence or argument that the trial court deems appropriate to assist it in determining reasonable bail and release conditions, if any. *See* Tex. R. App. P. 31.3, 43.2(d), 43.6; *Briscoe*, 2015 WL 5893470, at \*5.

14

Per Curiam

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 31, 2019